Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

WEBB V. COMMONWEALTH.

January 24, 1918.

1. INDICTMENT AND INFORMATION—*Conclusion—Against the Peace and Dignity of the Commonwealth of Virginia.*—Constitution of 1902, section 106, provides that: "Indictments shall conclude 'against the peace and dignity of the Commonwealth.'" An indictment which concludes "against the peace and dignity of the Commonwealth of Virginia" does not violate this provision. The added words "of Virginia" were plainly surplusage.

2. INSTRUCTIONS—*Read as a Whole.*—Instructions must be read as a whole.

3. INSTRUCTIONS—*Intent—Instructions Must be Read as a Whole—Larceny.*—Accused was charged with the larceny of a horse. Upon the question of the intent of the accused in taking the horse the trial court, at the request of the Commonwealth, instructed the jury "that in criminal cases a man on trial is presumed to have intended that which is the necessary consequence of his act, and that the jury are the judges of the evidence and can draw such deductions from the entire evidence as in their judgment should be drawn therefrom and act on same in finding their verdict." The court also instructed, at the request of the accused, "that the burden of proof is on the Commonwealth to prove beyond all reasonable doubt each and every allegation of the indictment, and if the jury shall have any rational doubt as to any important fact necessary to convict the accused of any offense, they are bound to give the accused the benefit of that doubt," and, "that the intent of the accused at the time of the taking of the horse in the indictment mentioned is a material fact in this case, and that before they can convict him of the offense charged they must be convinced beyond all reasonable doubt that at the time he took it, he took it intending wholly to deprive the owner of this horse and without an intention to return it." In substance, the instruction given at the request of the Commonwealth has been repeatedly applied, and in the case at bar, as qualified by the other instructions, could not have misled the jury

4. **Venue**—*Evidence*—*Judicial Notice.*—In the instant case it was contended that the Commonwealth failed to prove that the offense was committed in Giles county, as charged. The evidence showed that the stable from which the horse was taken was at Newport, and it appeared from an act of the General Assembly of Virginia that the village known as the town of Newport, in the county of Giles, was incorporated under that name. As the Supreme Court of Appeals will take judicial notice of charters of municipal corporations, the evidence was sufficient to show that the offense was committed in Giles county.

5. **Larceny**—*Intent*—*Proof of*—*Questions of Law and Fact.*—In a prosecution for larceny, it is essential for the Commonwealth to prove that the original taking was felonious; that is to say, that the taking was done with no intention to return the property taken, but to deprive the owner thereof permanently. Yet, whether or not there was such intent was a question of fact for the determination of the jury; and, if from the whole evidence, such intent might fairly be inferred, the verdict of the jury to that effect, approved by the trial court, ought not to be disturbed by an appellate court. It has been well said that there is not one case in a hundred where the felonious intent in the original taking can be proved by direct evidence. From the nature of the case, intent, generally, must be inferred from circumstances.

6. **Larceny**—*Intent*—*Proof of.*—In the instant case, the evidence tended to show that the horse was secretly and clandestinely taken in the night time, in the absence of the owner, without any claim of right and that no act had been done by the accused down to the time of his arrest to indicate a purpose to restore it to the owner, these were circumstances conducing to the belief that the taking was felonious; and, if the jury believed that these circumstances had been established, they were sufficient to warrant their finding accused guilty, notwithstanding the defendant's protestation of his innocence.

7. **Appeal and Error**—*New Trial.*—Under section 3484, Code of 1904, the case of the plaintiff in error was before the Supreme Court of Appeals as upon a demurrer to the evidence, and the rule is settled by numerous decisions of that court that the verdict of a jury will not be set aside on writ of error where, when so considered, there is sufficient evidence to support it.

Error to a judgment of the Circuit Court of Giles county.

*Affirmed.*

The opinion states the case.

*W. B. Snidow,* for the plaintiff in error.

*Attorney-General Jno. Garland Pollard, Assistant Attorney-General J. D. Hank, Jr.,* and *Leon M. Bazile,* for the Commonwealth.

WHITTLE, P., delivered the opinion of the court.

Plaintiff in error, Philip Webb, a negro boy, was indicted for the larceny of a horse, the property of Dr. F. S. Givens, and sentenced to confinement in the penitentiary for three years conformably to the verdict of the jury.

It appears from the evidence that Webb, in company with another negro, Page, went to the stable of Dr. Givens, a physician living at Newport, Va., in the night time, and the accused, without the knowledge or consent of the owner, who was absent from home, took therefrom the horse in question. Dr. Givens, upon his return and discovery that his horse had been taken, by the use of the telephone procured the arrest of the accused while several miles from Newport and riding the horse in another direction. Page, who was arrested at the same time, was riding a horse belonging to a Mr. Logan, which he had taken from his pasture field. The boys when arrested stated that by previous arrangement they were on their way to Eggleston, a village five or six miles distant from Newport, to visit a colored girl; that they were merely taking a ride, and Page asserted that Logan had given him permission to ride his horse whenever he wanted to. Webb was the only witness introduced in his own behalf, and substantially gave the foregoing version of the occurrence. He denied that he intended to steal the horse, but declared that it was his purpose to ride it to Eggleston, and return before daylight, so

that nobody would know anything about the affair, and he said he would have accomplished his purpose if the owner had not missed the horse and caused his arrest.

The assignments of error are:

1. To the overruling of a motion to quash the indictment, and also the demurrer thereto. The ground of this assignment is that the indictment does not conclude in the precise terms prescribed by section 106 of the Constitution of Virginia. The section reads: "Writs shall run in the name of the 'Commonwealth of Virginia' and be attested by the clerks of the several courts. Indictments shall conclude 'against the peace and dignity of the Commonwealth.'" This indictment concludes "against the peace and dignity of the Commonwealth of Virginia," and it is insisted that the addition of the words "of Virginia" violates the constitutional provision, and renders the indictment invalid. This identical question was decided adversely to the present contention by this court in *Brown* v. *Commonwealth*, 86 Va. 466, 467-8, 10 S. E. 745, 746; hence, we need hardly do more than iterate what was said by the court in that case, namely: "The mere statement of the objection to the conclusion of the indictment is a sufficient answer to it." The concluding clause contained all the words required by the Constitution, and the added words "of Virginia," was plainly surplusage, which in no way could have operated prejudicially to the accused, and does not constitute reversible error.

2. The second assignment of error is to the giving of the following instruction at the request of the Commonwealth: "The court instructs the jury that in criminal cases a man on trial is presumed to have intended that which is the necessary consequence of his act, and that the jury are the judges of the evidence and can draw such deductions from the entire evidence as in their judgment should be drawn therefrom and act on same in finding their verdict."

Instructions must be read as a whole, and from that view-point the above instruction should be considered. At the request of the defendant the court gave two instructions, as follows:

(a) "The court instructs the jury that the burden of proof is on the Commonwealth to prove beyond all reasonable doubt each and every allegation of the indictment, and if the jury shall have any rational doubt as to any important fact necessary to convict the accused of any offense, they are bound to give the accused the benefit of that doubt."

(b) "The court instructs the jury that the intent of the accused at the time of the taking of the horse in the indictment mentioned is a material fact in this case, and that before they can convict him of the offense charged they must be convinced beyond all reasonable doubt that at the time he took it, he took it intending wholly to deprive the owner of this horse and without an intention to return it."

The first instruction did not tell the jury "that the necessary consequence of finding the horse in Webb's possession was that he was guilty of the larceny of it," as counsel seemed to suppose; but, after stating that one is presumed to have intended the necessary consequences of his act, the jury were told that they were the judges of the evidence, and could draw such deductions from the entire evidence as in their judgment should be drawn therefrom and act on the same in finding their verdict. In substance, this instruction has been repeatedly applied, and certainly in this case, as qualified by the other instructions, could not have misled the jury. *Horton* v. *Commonwealth,* 99 Va. 848, 853, 38 S. E. 184; *McCue's Case,* 103 Va. 870, 910, 49 S. E. 623.

3. The last assignment is based upon the contentions that the Commonwealth failed to prove that the offense was committed in Giles county; and that the evidence was

not sufficient to sustain the verdict. The evidence shows. that Dr. Givens' house and the stable from which the horse was taken were at Newport, and it appears from an act of the General Assembly of Virginia that the village known as the town of Newport, in the county of Giles, was incorporated under that name. Acts 1871-2, p. 106. It is settled law that this court will take judicial notice of charters of municipal corporations. *Duncan* v. *City of Lynchburg*, 2 Va. Dec. 700, 706, 34 S. E. 964.

With respect to the contention that the evidence is not sufficient to sustain the verdict. It is true, and the jury were so instructed, that in order to find the accused guilty, it was essential for the Commonwealth to prove that the original taking was felonious—that is to say, that the taking was done with no intention to return the horse, but to deprive the owner thereof permanently. Yet, whether or not there was such intent was a question of fact for the determination of the jury; and, if from the whole evidence, such intent might fairly be inferred, the verdict of the jury to that effect, approved by the trial court, ought not to be disturbed by an appellate court. It has been well said that there is not one case in a hundred where the felonious intent in the original taking can be proved by direct evidence. From the nature of the case, intent, generally, must be inferred from circumstances. *Booth* v. *Commonwealth*, 4 Gratt. (45 Va.) 552.

Where, therefore, as in this case, the evidence tended to show that the horse was secretly and clandestinely taken in the night time, in the absence of the owner, without any claim of right; and that no act had been done by the accused down to the time of his arrest to indicate a purpose to restore it to the owner, these were circumstances conducing to the belief that the taking was felonious; and if the jury believed that these circumstances had been established, they were sufficient to warrant their finding, notwithstanding the defendant's protestation of his innocence.

Plaintiff in error's case is before us as upon a demurrer to the evidence (Code, sec. 3484), and the rule is settled by numerous decisions of this court that the verdict of a jury will not be set aside on writ of error where, when so considered, there is sufficient evidence to support it.

*Affirmed.*