# Staunton

RUBEN PIERCE v. COMMONWEALTH OF VIRGINIA.

HUBERT EARL HOFFLER v. COMMONWEALTH OF VIRGINIA.

September 11, 1964.

Record Nos. 5766, 5767.

Present, All the Justices.

*Robert J. Parr* (*Major M. Hillard, Jr.; Thomas L. Woodward; Parr & Hunter*, on brief), for the plaintiffs in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The defendants, Ruben Pierce and Hubert Earl Hoffler, were indicted separately for robbery in taking an ignition key to a truck from Joseph Jordan by putting him in fear by means of a loaded pistol. Code § 18.1-91. Each waived a jury and at their request and by agreement they were tried together by the court. After hearing the evidence the court found each guilty of robbery and fixed his punishment at five years in the penitentiary and each was sentenced accordingly.

Each defendant was granted a writ of error and they are here on a joint brief in which they contend that the judgments were contrary to the law and the evidence; that there was no evidence of any intent to steal and that Pierce in no way acted in concert with Hoffler.

The evidence is in conflict. Four persons were present at the scene of the alleged crime, which occurred in a house on Crumpler Lane in the city of Suffolk on January 13, 1962. Two of those present testified for the Commonwealth as follows:

Joseph Jordan testified that a few days prior to January 13 he had a conversation with Pierce in which Pierce said he wanted to buy Jordan's truck and Jordan told him he would sell it to him for $150. Pierce said he wanted to take it to his buddy and let him look at it, so Jordan gave Pierce the keys and Pierce kept the truck about three days and then brought it back and gave Jordan the keys.

Prior to offering to sell the truck to Pierce, Jordan had agreed to sell it to Gilbert Rollins for $150, and Rollins had paid him $115, but had later given Jordan permission to sell the truck and return to Rollins the amount he had paid on it, and Jordan said that was what he was planning to do.

On January 13 Pierce came to the house on Crumpler Lane and told Jordan he wanted to take him to see his buddy and get the

money to pay for the truck. On the way Pierce told Jordan he was going to give him $32 and three cases of liquor for the truck. Jordan told him he did not want that; that he wanted money for the truck; so Pierce brought him back to the house and left, saying he was going to get the money. This was about ten o'clock in the morning. He came back around two o'clock that afternoon bringing with him the defendant, Hoffler, whom Jordan had never seen before.

Pierce came into the house first, followed by Hoffler. Hoffler asked Jordan why he made a deal with Pierce and then wanted to back out. Jordan tried to explain to him he had not made any deal and looked around to say something to Pierce. As he did so, Hoffler whipped out a pistol and hit Jordan on the side of the head with it and fired the pistol. The bullet went through a wall of the room. Hoffler then held the pistol on Jordan and forced him to give the keys to the truck to Pierce, who was standing by. Pierce and Hoffler then drove the truck away and it was afterwards picked up by the police and returned to Jordan. Neither defendant ever gave Jordan any money for the truck.

After this occurrence Jordan procured a warrant against Hoffler charging him with larceny of the truck in Nansemond county but did not press that charge and it was withdrawn. He said the people told him that he had to get a warrant before he could get his truck back.

Florence Staton, another of the four persons present, corroborated the testimony of Jordan that Hoffler forced Jordan at the point of a pistol to give the keys to Pierce, and that no money was given or involved in the occurrence. She said that after Hoffler fired the pistol Pierce told Hoffler he didn't want to have any trouble; then Jordan at the command of Hoffler gave the keys to Pierce, and Pierce and Hoffler backed out of the door as Hoffler kept the gun on Jordan.

On behalf of the defendants, Pierce testified that he bought the truck from Jordan for $150 and paid him $115 in cash; that Jordan delivered the truck to him and he told Jordan he would bring the rest of the money back in a day or two and pick up the title; that in about a week or more he came to Suffolk, picked Jordan up and took him in a car to Mr. Cofield's, in Norfolk, and on the way Jordan told him he was not going to let him have the truck at the price he promised; and he, Pierce, wouldn't agree to give him any more. They went on to Cofield's and there Hoffler, in the presence of Cofield, said, "Well, take him on back and let him give you your money

back." When they got back to Suffolk, Jordan said he wasn't going to give him any money until he brought the truck back, so Pierce returned to Portsmouth where the truck was [he first said it was in Norfolk] and got Hoffler to drive the truck back. Their purpose was, he said, to get the money he had given Jordan.

When they arrived at Crumpler Lane, Hoffler stayed outside but Pierce went into the house and Jordan said, "I'm not going to give you the truck and I'm not going to give you the money." Thereupon he, Pierce, called Hoffler, who came in and asked Jordan why he wouldn't give the money back, or was he willing to give the money back. Jordan said no and "blowed up there and made a rush there and — * * made a — sorta got loud in his talk and in a minute or two the gun fired and that's all there was to it. We didn't get the money and we didn't get the truck." Pierce said he did not know who fired the gun or why. He was then asked, "What about the keys?" He replied, "We left the keys there." But he also said that they took the truck back to Portsmouth and left it until some officer came and got it. He said Cofield saw him pay Jordan the $115 and "counted the money himself."

Defendant Hoffler testified that Pierce told him he had made arrangements to buy a truck in Suffolk and wanted him to look at it; that they met Jordan at the Amoco station on Norfolk Road and he, Hoffler, paid "the man" $115 and took the truck to Cofield's junk yard in Portsmouth and left it there a week or ten days. Then he asked Pierce "did he ever get it straightened out." He said no and he was going to find "the boy." Pierce brought Jordan to the junk yard but "Jordan went up $50 on the price." He asked Pierce why he didn't let Jordan give his money back and forget about the truck. Jordan said he would give him the money back if they would take him and the truck back to Suffolk. Hoffler drove the truck back to Suffolk. There Pierce went into the house to get the money but came back out and said Jordan wouldn't give him the truck or the money either, and that Jordan said "come on in and we'll get the damn mess straight right now." He, Hoffler, went into the house and said, "What's all the argument about? * * Give him the money back or give him the truck; the deal you agreed on." Jordan reached into his pocket and took out a knife and said, "You ain't got a damn thing to do with it." He, Hoffler, then pulled a pistol out of his pocket and hit Jordan on the side of the head with it and told him, " 'Make another move with that knife, I'll kill you.' We backed out

the door and got in the truck and left." He said that Pierce had the keys. The gun went off accidentally, he said, when he hit Jordan with it.

■ The defendants assert first that this evidence does not furnish sufficient proof of robbery. The statute, Code § 18.1-91, fixes the punishment for, but does not define, the crime of robbery. Consequently we look to the common law for its definition. *Butts* v. *Commonwealth*, 145 Va. 800, 811, 133 S.E. 764, 767; *Fleming* v. *Commonwealth*, 170 Va. 636, 639, 196 S.E. 696, 697.

Robbery at common law is defined as the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation. *Mason* v. *Commonwealth*, 200 Va. 253, 254, 105 S.E. 2d 149, 150.

The evidence being in conflict, the judgment of the trial court who heard it *ore tenus* has the same weight as the verdict of a jury, and we are not at liberty to disturb the finding unless plainly wrong or without evidence to support it. *Ferrell* v. *Beddow*, 203 Va. 472, 476, 125 S.E.2d 196, 200. In such case, where the sufficiency of the evidence is assailed, it is our duty to look to that evidence which tends to support the verdict and to permit it to stand unless plainly wrong. *Snyder* v. *Commonwealth*, 202 Va. 1009, 1015-6, 121 S.E.2d 452, 457; *Leigh* v. *Commonwealth*, 192 Va. 583, 593, 66 S.E.2d 586, 593.

Applying those principles, it is not doubtful that the evidence was sufficient to prove that the keys were taken from the person of Jordan against his will, by violence or intimidation.

■ The defendants say there was no evidence of the value of the key. The indictments charged the taking of one ignition key of the value of thirty-five cents, the property of Joseph Jordan. It was not necessary that there be distinct proof of a specific value. The description of the key was sufficient to show that it was of some value. *Wolverton* v. *Commonwealth*, 75 Va. 909, 913.

■ Defendants' main argument is that there was no proof of intent to steal. They assert that Pierce only stood by while Hoffler and Jordan argued; that if there was any offense at all it was committed by Hoffler and was only assault and battery.

Proof of intent to steal is, of course, necessary to a conviction of robbery. It is definitely an element of the crime as defined above.

The felonious intent to steal, or the *animus furandi*, is as necessary to constitute robbery as it is to constitute larceny. The robber must

have a fraudulent intent, and must intend to deprive the owner permanently of his property. Clark and Marshall on Crimes, § 383, p. 540.

"* * Now what is this *animus furandi?* It is generally translated as 'an intent to steal.' But what is an intent to steal? It is an intent to feloniously deprive the owner permanently of his property. But 'feloniously' in this connection simply means 'with criminal intent.' * *." *Butts* v. *Commonwealth, supra,* 145 Va. at 812, 133 S.E. at 768.

"* * The jury [and the court in this instance] may infer the felonious intent from the immediate asportation and conversion of the property, in the absence of satisfactory countervailing evidence by the prisoner. The whole question is one peculiarly for their consideration, to be determined upon all the facts and circumstances." *Jordan* v. *Commonwealth,* 66 Va. (25 Gratt.) 943, 948; *Webb* v. *Commonwealth,* 122 Va. 899, 904, 94 S.E. 773, 775.

The "countervailing evidence" relied on by the defendants is their testimony to the effect that what they did was done under a *bona fide* claim of right. To take property under a *bona fide* claim of right, as under a claim of ownership, or in a *bona fide* attempt to enforce payment of a debt, is not robbery though the taking be accompanied by violence or putting in fear. Clark and Marshall on Crimes, *supra,* p. 541.

"* * [T]here can be no larceny of the property taken if it, in fact, is the property of the taker, or if he, in good faith, believes it is his, for there is lacking the criminal intent which is an essential element of larceny. * *." *Butts* v. *Commonwealth, supra,* 145 Va. at 811-2, 133 S.E. at 767-8.

But if the claim of right is a mere pretext covering the intent to steal, the taking by violence is robbery. Anno., 46 A.L.R.2d 1234.

Here there is definite conflict in the evidence as to the claim of the defendants that they acted in good faith and without criminal intent. Their claim was that Jordan had agreed to sell the truck to Pierce and had been paid $115 of the purchase money. Pierce said he paid it, Hoffler said he paid it; Jordan said neither paid it and that he received no money in any amount from either of them. Pierce said Cofield was there and counted the money when he paid Jordan. Cofield did not testify and so far as the record shows was not summoned as a witness. Defendants said their mission to the house was to get from Jordan either the money or the truck. According to Jordan they had no right to either and no basis for their claim.

Jordan and Staton testified that Hoffler by force and violence required Jordan to surrender the keys to Pierce. Hoffler said there was no question about keys and that he struck Jordan with the pistol in self-defense and the pistol fired accidentally. Pierce said he did not know who fired the shot or why. At different places in Pierce's testimony he said: "We left the keys there." "I had the keys." "Maybe I handed the keys to Joe [Jordan] and he handed them back to me." He testified that they got neither money nor the truck, but the fact is that they drove the truck away and kept it until it was recovered by officers.

Where the evidence is conflicting the question of *bona fides* is for the trier of the facts, in this case the court. *Jordan* v. *Commonwealth, supra; Butts* v. *Commonwealth, supra.*

That rule is particularly applicable in this case because the defendants had both served terms in the penitentiary on convictions of felonies, proof of which was admissible under Code § 19.1-265 on the question of their credibility; and an officer testified that Jordan had a reputation of "messing with some whiskey" and that his reputation for integrity was "just fair."

The oportunity of the trial court to see and hear these witnesses was helpful beyond the ordinary in ascertaining the truth.

■ There is no merit in the contention that Pierce was only an innocent bystander. He and Hoffler came to the house together with a common purpose. He brought Hoffler into the house and stood by and received the keys which Hoffler forced Jordan to surrender and then backed out of the house with the keys in his posession while Hoffler held the pistol on Jordan. He was clearly an aider and abettor and as such liable as a principal. Code § 18.1-11; *Snyder* v. *Commonwealth, supra,* 202 Va. 1009, 1015, 121 S.E.2d 452, 457.

On the evidence presented the court was warranted in accepting the Commonwealth's evidence that the defendants did not act under a good faith claim of right but took the keys from Jordan with criminal intent and under circumstances constituting robbery.

The judgments appealed from are therefore

*Affirmed.*