# Richmond

## RICHARD LEE SKEETER, JR. V. COMMONWEALTH OF VIRGINIA.

March 4, 1977.

Record No. 760662.

Present, All the Justices.

*Donald G. Wise,* for plaintiff in error.

*Alan Katz, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Richard Lee Skeeter, Jr. was convicted of grand larceny in the court below under an indictment ·containing a count which charged that defendant, on November 7, 1975, "did steal U. S. currency . . . having a value of approximately $200 belonging to Charlie R. Mason". This appeal questions the form of the indictment and the sufficiency of the evidence to convict him.

Charlie R. Mason operates an insurance agency in Portsmouth. On November 7, 1975, Skeeter entered Mason's office ostensibly to seek information regarding automobile insurance. During their conversation Skeeter inquired if Mason would "like to have three color television sets real cheap", "a hundred dollars for all three". Defendant's plan, as outlined to Mason, was that they would go to the J. M. Fields store in Portsmouth, pay $200 to a girl friend of Skeeter's who worked there and that she would go back to the credit department, run through the necessary papers and receive a pickup slip which would entitle them to receive the television sets from the store's loading ramp.

Mason said that defendant wanted him to go immediately to the J. M. Fields store, but that, being suspicious that defendant was attempting "a ripoff" or some "confidence scheme", Mason told Skeeter that he could not close his insurance office at that time and asked defendant to come back an hour later. As soon as Skeeter left the insurance office, Mason called the Portsmouth detective bureau, and arrangements were made for Mason to obtain identifiable money from a local bank and otherwise cooperate with defendant. It was understood that at the appropriate time the police would apprehend defendant and frustrate his scheme.

When Mason returned to his office, after having obtained the money, he was approached by a "girl dressed in black, trimmed in red", who asked if he was "looking for Mr. Skeeter". When Mason replied in the affirmative, she said: "Well, I am with him." Mason noticed that Skeeter was sitting in a Cadillac automobile parked near his office. Mason in his automobile, and defendant with the girl in the Cadillac, then drove to the J. M. Fields store. After parking, all three walked inside the store. Although defendant requested that Mason give him the money before the three parties entered, Mason declined, having been instructed by the police not to give Skeeter any money until they were inside the store. When the parties got about midway in the store Mason gave Skeeter two $100 bills, and defendant, in turn, gave the money to the girl. Mason testified that at this point the girl "made a left turn down the aisle and he [Skeeter] told me, . . . 'Let's wait out in the mall part here and give her a chance to get the televisions back to the loading plat-

form and bring me the ticket back' to where we could go in the back and pick them up."

It appears that after waiting approximately five minutes Skeeter suggested that they go back to the platform where he said the girl would probably be; that when they went to the platform, no one was there; that Mason said to defendant, "Well, you and I have been ripped off."; and that Skeeter responded, "Well, let's go back to your office. Maybe she's down at your office with the receipts." Mason and Skeeter drove to a place near Mason's office known as "Bob's Hot Dog Stand", where defendant made a telephone call and told Mason, "She's [the girl] going to meet us in the parking lot of an old abandoned station at Frederick Boulevard and Turnpike Road." Mason and Skeeter then went to this location where defendant made another telephone call from a telephone booth. He then represented to Mason that, "We are supposed to go to a girl friend's apartment." When asked where the girl friend lived, defendant replied: "You just go where I tell you to go." Shortly thereafter, the police stopped Mason and Skeeter and arrested defendant.

Mason never received any television sets or recovered the two $100 bills which he gave defendant and which defendant handed to the girl. Between the time the three parties entered the Fields store and the time Mason and Skeeter went to the loading platform, Mason said the Cadillac automobile used by Skeeter and the girl had disappeared.

■ We find no merit in defendant's objection to the form of the indictment. Aside from the fact that defendant made no objection to the indictment at trial, the charge therein that he did steal U. S. currency of the value of $200 from Mason is sufficient to charge defendant with the commission of larceny of goods and chattels of the value of $100 or more as defined in Code § 18.2-95. The indictment is sufficient to give the accused notice of the nature and character of the offense charged so that he could make his defense.

Contrary to defendant's contention, it was unnecessary that there be a specific allegation of felonious intent contained in the indictment. In *Satterfield* v. *Commonwealth*, 105 Va. 867, 870, 52 S.E. 979, 980 (1906), we held that a charge in a warrant that the accused did unlawfully take, steal and carry away the property of another is sufficient to charge larceny.

The sole evidence in this case is the undisputed testimony of Charlie R. Mason, and it is amply sufficient to support a judgment of conviction. Manifestly the trial judge concluded that Mason was the intended victim of a larcenous scheme employed by defendant and his girl-accomplice.

■ Larceny has often been defined as "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently. The *animus furandi* must accompany the taking, but the wrongful taking of the property in itself imports the *animus furandi*". *Dunlavey* v. *Commonwealth*, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945). *See Vaughan* v. *Lytton*, 126 Va. 671, 101 S.E. 865 (1920).

We do not agree with defendant's contentions that the Commonwealth failed to establish the requisite intent on defendant's part to steal, or that the taking of Mason's money was not established to be wrongful because Mason consented to the taking.

The fact that Mason consented to surrender temporarily the possession of $200 to defendant, pursuant to instructions of the police and for the specific purpose of aiding the police in frustrating the perpetration of a fraud on either himself or on the J. M. Fields store, does not have the effect of negating the wrongful act perpetrated by defendant. Had defendant carried out his original proposal and, with the aid of an accomplice within the J. M. Fields store, delivered to Mason three color television sets for $200, he would have committed larceny from the store. Instead, the evidence discloses that larceny from the store was never in fact intended by defendant. Rather his scheme was to commit larceny of money from Mason upon the pretence of obtaining color television sets for a grossly inadequate price, with the aid and cooperation of an accomplice in the store.

The criminal design originated with defendant. Mason neither suggested nor urged Skeeter on to the commission of a crime. The larceny of Mason's money was completed when defendant accepted it from Mason in the Fields store with larcenous intent.

Our observations in *Webb* v. *Commonwealth*, 122 Va. 899, 904, 94 S.E. 773, 775 (1918), are pertinent here:

"With respect to the contention that the evidence is not sufficient to sustain the verdict. It is true, and the jury were so instructed, that in order to find the accused guilty, it was essential for the Commonwealth to prove that the original taking was felonious — that is to say, that the taking was done with no intention to return the horse, but to deprive the owner thereof permanently. Yet, whether or not there was such intent was a question of fact for the determination of the jury; and, if from the whole evidence, such intent might fairly be inferred, the verdict of the jury to that effect, approved by the trial court, ought not to be disturbed by an appellate court. It has been well said that there is not one case in a hundred where the felonious intent in the original taking can be proved by direct evidence. From the nature of the case, intent, generally, must be inferred from circumstances. *Booth* v. *Commonwealth*, 4 Gratt. (45 Va.) 552."

The judgment of the lower court will be

*Affirmed.*