UNPUBLISHED

# COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Malveaux
Argued by videoconference


DANA MIGUEL KEITH

                                        MEMORANDUM OPINION* BY
v.       Record No. 1921-19-3          JUDGE MARY BENNETT MALVEAUX
                                            NOVEMBER 17, 2020
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Roger L. Dalton, Senior Assistant Public Defender (Office of the
Capital Defender, Southwest Region, on brief), for appellant.

Alphonso Simon, Jr., Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Dana Miguel Keith ("appellant") was convicted of capital murder, two or more victims, in

violation of Code § 18.2-31, two counts of capital murder in the commission of a robbery, in

violation of Code § 18.2-31, two counts of robbery, in violation of Code § 18.2-58, and four counts

of use of a firearm during the commission of a felony, in violation of Code § 18.2-53.1. On appeal,

he challenges only the robbery convictions, arguing that the trial court erred in finding the evidence

sufficient as to these convictions when the evidence indicated that any larceny that occurred was an

opportunistic afterthought to murders committed for other reasons. For the following reasons, we

affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

"When the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the prevailing party at trial, in this case the Commonwealth, and accord to it all inferences fairly drawn from the evidence."  Grimes v. Commonwealth, 288 Va. 314, 318 (2014).

On the evening of June 1, 2017, appellant, Jessica Bruce, David Thacker, Takeira Barley, and Nydia Williamson were at an apartment in the Woodside Village apartment complex in Danville.  They left this apartment to attend a "kickback" at the home of appellant's sister, China Keith.  At some point, Bruce, Thacker, Barley, and appellant left China Keith's home in Bruce's car to go to the Sunrise, a store in Danville.  At the same time, Breia Edmunds, Marquis Brandon, Damarkus Whitehead, and Williamson left China Keith's home and went to the Sunrise in another vehicle.  After spending some time at the Sunrise, Bruce drove appellant, Thacker, Barley, and Williamson to the driveway of the Woodside Village office.

Bruce, Thacker, and Barley testified that during the drive from the Sunrise to Woodside Village,  appellant had stated that he "was going to get" Whitehead.  Williamson testified that during this drive she had heard appellant say on his cell phone that he was looking for a gun to use to kill Whitehead.  Barley testified that appellant had told her earlier that evening that he was mad because of an altercation that had occurred between himself and Whitehead.

After arriving at the Woodside Village office, appellant and Thacker left Bruce's vehicle. After appellant and Thacker left her car, Bruce drove Williamson and Barley to Williamson's apartment at the other side of the apartment complex.  While they were outside of the car, but before they entered the apartment, Williamson and Barley heard a gunshot.

Malcolm Gregory testified that same evening he had met appellant and Thacker near the Woodside Village business office.  Thacker asked Gregory for his gun, which Gregory gave to

him. Thacker then gave appellant the gun, and appellant left the area in another car with Edmunds and Whitehead. Later that evening, Bruce and Thacker picked up appellant from the Woodside Village apartments, and appellant told Thacker that he had "got" the two individuals in the car, had "kill[ed]" them, and had "d[one] what [he] had to do." Appellant told Thacker that he had gotten counterfeit money and a necklace.

Later that evening, appellant told Barley that "he had to kill both of 'em." Appellant did not tell her why he had to kill Whitehead, but he stated that he had to kill Edmunds because she was "a witness."

At approximately 11:30 p.m. on the evening of the killings, John Christner looked out his front door after hearing noises outside his house. Christner saw a car "drift[] down the street" and then stop at a curb. He also saw an individual run away from the car. Christner called 911. He also walked over to the car and observed two people inside it who were hunched or slumped over. When he asked them if they needed help, they did not respond.

At 11:47 p.m. that evening, Officer J.M. Massey with the Danville Police Department received a call to report to a vehicle crash. When he arrived, Massey saw a car stopped at an intersection. A deceased female was in the driver's seat, and a deceased male was in the front passenger seat. The woman was later identified as Edmunds, and the man was identified as Whitehead. Edmunds had been shot once in the right side of her head. Whitehead had sustained a single gunshot wound to the back of his head.

Two shell casings were found in the right rear seat of the car. Police also found a purse on the front passenger floorboard which contained an empty iPhone case. A "small, gold like" jewelry clasp was also found on the front passenger floorboard.

- 3 -

Tonalisa Edmunds, Edmunds' mother, testified at trial that her daughter owned an iPhone 7. During a jailhouse phone call, appellant admitted having an iPhone 7 that he wanted to get "cleared off."

Ebony Brooks was in a relationship with appellant at the time of the killings. Brooks testified that appellant, Thacker, and Bruce stopped by her apartment in Woodside Village late on the evening of June 1, 2017. She was uncertain how long they stayed. During a jailhouse phone call after appellant was arrested, appellant told Brooks "[t]o get his stuff," meaning two chains that he had left at her apartment. After executing a search warrant, police later recovered the chains from Brooks' home.

Police showed the chains to Kimberly Whitehead, Damarkus Whitehead's mother, and she identified them as belonging to her son. She recognized them because "[t]hey were the ones that [she had] seen him with every day."

Following the Commonwealth's case-in-chief, appellant moved to strike the evidence as to the two robbery charges. The court denied the motions to strike. Appellant did not present any evidence and renewed his motions to strike. After hearing final arguments, the court found appellant guilty of both robbery charges.

This appeal followed.

## II. ANALYSIS

Appellant argues that the evidence was insufficient to support his convictions for robbery.

When reviewing a challenge to the sufficiency of the evidence, "[w]e will disturb the judgment of the circuit court only upon a showing that it is plainly wrong or without evidence to support it." Commonwealth v. Anderson, 278 Va. 419, 424 (2009). This Court "does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable

doubt.'" Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

"Robbery is a common-law crime in Virginia, although its punishment is prescribed by Code § 18.2-58." Pritchard v. Commonwealth, 225 Va. 559, 561 (1983). Robbery "is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" Ali v. Commonwealth, 280 Va. 665, 668 (2010) (quoting Durham v. Commonwealth, 214 Va. 166, 168 (1973)).

"The felonious intent to steal, or the *animus furandi*, is as necessary to constitute robbery as it is to constitute larceny. The robber must have a fraudulent intent, and must intend to deprive the owner permanently of his property." Pierce v. Commonwealth, 205 Va. 528, 532-33 (1964). The fact finder "may infer the felonious intent from the immediate asportation and conversion of the property, in the absence of satisfactory countervailing evidence" from the accused. Id. at 533. "[T]he wrongful taking of property in itself imports the *animus furandi*." Skeeter v. Commonwealth, 217 Va. 722, 725 (1977).

Further,

> [t]he principal elements of robbery . . . are the taking, the intent to steal, and the violence (or intimidation). Definitionally, there is a temporal correlation among these elements. The violence must occur before or at the time of the taking. The intent to steal and the taking must coexist. And the offense is not robbery unless the *animus furandi* was conceived before or at the time the violence was committed.

Branch v. Commonwealth, 225 Va. 91, 94-95 (1983). Thus, "[a] conviction for robbery requires proof beyond a reasonable doubt that the defendant . . . took property from the victim by force, threats, or violence, and that the intent to steal co-existed with the act of force." Pugliese v. Commonwealth, 16 Va. App. 82, 92 (1993). For this Court to find sufficient evidence to sustain a conviction for robbery, "the act must be done with a specific criminal intent existing at the time of the commission of the act. . . . If the criminal intent did not exist when the alleged offense was committed, the crime has not been established. The intent subsequent to the taking is immaterial." Jones v. Commonwealth, 172 Va. 615, 618-19 (1939).

"The violence or intimidation by which robbery is accomplished must precede or be concomitant with the taking. If the robbery is accomplished by killing the victim, it is immaterial that the victim is dead when the theft occurs." Shepperson v. Commonwealth, 19 Va. App. 586, 591 (1995). However, "[Virginia] common law makes clear that proof of an intent to steal which arises merely as an afterthought to the application of force, rather than prior to or concurrently with it, is insufficient to prove robbery." Dean v. Commonwealth, 61 Va. App. 209, 218 (2012).

"Intent in fact is the purpose formed in the person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements." Nobles v. Commonwealth, 218 Va. 548, 551 (1977). "Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements. The statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent." Simon v. Commonwealth, 58 Va. App. 194, 206 (2011) (citation omitted). "An intent to commit robbery does not have to exist for any particular length of time. It may occur momentarily. Whether such an intent did

exist is to be determined from the particular facts and circumstances of the acts committed."
Durham, 214 Va. at 169.

Determining intent presents a factual question which "lies peculiarly within the province of the [fact finder]." Walker v. Commonwealth, 47 Va. App. 114, 121 n.5 (2005) (alteration in original) (quoting Hughes v. Commonwealth, 18 Va. App. 510, 519 (1994) (*en banc*)). "[A] trial court's decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." Towler v. Commonwealth, 59 Va. App. 284, 297 (2011).

Appellant argues that the evidence was insufficient to establish that his intent to steal the chains and iPhone was contemporaneous with the shootings.

We hold, contrary to appellant's argument, that sufficient circumstantial evidence supported the finding that appellant had the intent to steal the jewelry and cell phone at the time of the killings, rather than as merely an opportunistic afterthought to the violence. In the instant case, appellant's intent can be inferred from his actions on the night in question—the taking of Whitehead's chains and Edmunds' phone during the course of the murders. As noted above, the fact finder "may infer the felonious intent from the immediate asportation and conversion of the property, in the absence of satisfactory countervailing evidence" from the accused, Pierce, 205 Va. at 533, as "the wrongful taking of property in itself imports the *animus furandi*," Skeeter, 217 Va. at 725. Viewed in the light most favorable to the Commonwealth, as we must because the Commonwealth prevailed in the trial court, the evidence supports the finding that either during or just after the killings, appellant took the stolen items from both victims. Barley and Williamson, who were in Bruce's car with Thacker and appellant before appellant and Thacker were dropped off at the Woodside Village business office, had just arrived at the other side of the apartment complex when they heard gunfire. During the brief interval between the drop-off and the gunfire, appellant and Thacker met Gregory. Gregory gave a firearm to Thacker, who in turn

gave this gun to appellant. Appellant then left the area in a car with Edmunds and Whitehead. Christner then saw a man running from a car after Christner heard noises outside his home. That car contained the bodies of Edmunds and Whitehead, who had been shot. Viewed as a whole, the evidence permitted the rational inference that appellant shot Edmunds and Whitehead almost immediately after he entered Edmunds' car and left the car shortly after he shot the victims. Therefore, appellant's taking of the items themselves, during or shortly after the killings, provided a reasonable inference that he had the intent to steal those items prior to or during the commission of the violence.

In addition, appellant did not discard either Whitehead's necklaces or Edmunds' iPhone after the offenses. Instead, he stored the stolen necklaces at Brooks' apartment and later asked her to get them for him. He also expressed his desire to "clear[]" the iPhone, which indicates that he wanted it for personal use or to resell it. The fact that appellant did not discard the stolen goods puts this case in clear contrast with Branch. In Branch, defendant shot the victim during an argument at defendant's home. 225 Va. at 93. After dragging the body into a bedroom, defendant removed the victim's wallet from his clothing and burned the contents. Id. On appeal, defendant argued that the evidence was insufficient to sustain his robbery conviction as it did not establish that his intent to steal the wallet was contemporaneous with the shooting. Id. at 94. Our Supreme Court agreed, finding that defendant's conduct in burning the wallet showed "that he was motivated by no other purpose than to cover up the crime he had committed[;]" therefore, "the violent killing and the unlawful taking were two separate acts, performed for entirely different reasons." Id. at 95. Here, unlike defendant in Branch, appellant kept the items he stole instead of discarding them, allowing for the reasonable inference that his intent to steal existed prior to or at the time of the killings.

Appellant further contends that the evidence was insufficient to prove that his intent to steal existed prior to or at the time of the killings because although he expressed his desire to kill Whitehead on the night of the robberies, he never told anyone that he wanted to rob either Whitehead or Edmunds. However, in the instant case the trial court could have properly inferred that appellant had dual motives in committing the violence, in that he desired to both kill the victims and steal their possessions. See Whitley v. Commonwealth, 223 Va. 66, 72-73 (1982) (rejecting defendant's argument that his intent to steal items from the victim was formed after the victim's death where defendant's statements and physical evidence suggested that the killing was committed for sexual reasons, because "the jury logically could have concluded that both sex and robbery motivated [defendant's] conduct"); George v. Commonwealth, 242 Va. 264, 280 (1991) (concluding that the evidence supported the finding that the murder and robbery of the victim were motivated by the dual purpose of sexually molesting the victim and robbing him where defendant had hidden stolen goods and had not destroyed them). Here, appellant took the items from the victims during or shortly after the killings and did not discard those stolen goods. Thus, the trial court could have reasonably inferred that robbery was, at least in part, the motive for the killings. Therefore, while witnesses did testify as to appellant's statements regarding his prior altercation with Whitehead and his killing of Edmunds because she was a witness, this testimony does not preclude a finding that appellant had dual motives in killing both victims.

Because reasonable inferences support the finding that appellant had the intent to steal the jewelry and cell phone prior to or during the killings, the trial court did not err in finding sufficient evidence to convict appellant of the robberies.

## III.  CONCLUSION

We hold that the trial court did not err in finding that appellant possessed the requisite intent to convict him of the robberies.  Accordingly, we affirm.

<u>Affirmed.</u>