COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Ortiz and Lorish


JERMAR WENDELL BROWN

                                                    MEMORANDUM OPINION*
v.      Record No. 1182-21-1                            PER CURIAM
                                                      AUGUST 9, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Tyneka L.D. Flythe, Judge[1]

(Christopher P. Reagan; Goldstein, Edgar, Reagan, on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, Jermar Wendell Brown was convicted of statutory burglary, grand

larceny, and two counts of conspiracy. Brown challenges the sufficiency of the evidence to support

his convictions. He argues that he had permission to stay at the victim's apartment where he was

found and thought he could sell the victim's clothing because the victim abandoned it. After

examining the briefs and record, we hold that the appeal is wholly without merit. Thus, we

dispense with oral argument under Code § 17.1-403(ii)(a) and Rule 5A:27(a). Moreover,

because the circuit court did not accept as credible Brown's testimony and there was sufficient

evidence on the record to sustain the convictions, we affirm the trial court's judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Tyneka L.D. Flythe issued the final sentencing order in this case. Judge C. Peter Tench conducted Brown's trial, found him guilty on all charges, and entered the conviction order before Brown was sentenced.

FACTS

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of Brown's conflicting evidence and "regard as true all the credible evidence favorable to the Commonwealth and all fair inferences" that may reasonably be drawn from that evidence. *Id.* at 473.

In December of 2018, Shawn Mayekar lived in an apartment in Denbigh Village in Newport News. Mayekar became acquainted with Brown and his girlfriend, Veronica Anthony; Mayekar knew them for about two to three weeks. Mayekar allowed Brown to stay at the apartment once overnight, and Brown and Anthony spent the night there with Mayekar on another occasion. Mayekar did not provide Brown or Anthony with a key to the apartment or give them permission to stay there permanently. Mayekar had spare keys to the apartment, but he was unsure where they were located when Brown and Anthony visited the apartment.[2]

On December 13, 2018, Mayekar left his apartment to visit his parents in Washington, D.C. The night before he left, during a telephone conversation with Brown, Mayekar mentioned that he was going out of town. The next day, Mayekar left his apartment in good order and locked.

Mayekar returned on December 18, 2018, to find his apartment in disarray and his property missing. Mayekar's mattress had been moved from his bed to the living room floor. Suits, shoes, and other clothing items valued at about $1,800 were missing from the apartment. A set of Beats headphones, which Mayekar purchased for more than $300, was gone. Mayekar had not given anyone permission to enter his apartment and take his property. A trash bag

---

[2] Mayekar thought he may have left a spare key in a small bowl in his kitchen.

containing Anthony's mail and some clothing was left behind in the apartment, and some of Anthony's clothing was in Mayekar's closet and dresser.

Mayekar contacted the police, who came to his apartment. A few hours later, when the police were at the apartment, Brown and Anthony appeared. Brown and Anthony were wearing Mayekar's clothing. Brown falsely claimed that Mayekar had left the door open, and Anthony said that Mayekar had given her a key. Anthony also said that "they thought [Mayekar] committed suicide."

Testifying in his own behalf, Brown said that he became friends with Mayekar during November and December of 2018 and that he stayed at Mayekar's apartment sometimes. According to Brown, he asked if he and Anthony could live at the apartment, and Mayekar agreed. Brown said he paid Mayekar weekly rent of about $100. Brown testified that he then stayed at Mayekar's apartment for over two weeks and that Mayekar drove him to work in Williamsburg. Brown claimed that Mayekar gave Anthony a key so that she and Brown could come and go at the apartment as they pleased. Brown also claimed that Mayekar took him and Anthony to their prior residences to gather their belongings. Brown said that Mayekar never told him and Anthony to leave and did not ask them to return his key. Brown claimed that Mayekar called him to say that he was leaving and never returning to Newport News. Brown asserted that, after Mayekar left, he and Anthony tried to take over the lease on the apartment, but the apartment management would not allow it. Brown admitted that he sold some of the clothes that Mayekar left behind at the apartment.

Anthony testified that she and Brown moved into Mayekar's apartment with his permission.[3] She said that Mayekar gave her a key to the apartment during the first or second

---

[3] In a joint bench trial, the trial court convicted Anthony for the same crimes for which it found Brown guilty.

week of December 2018 and that she saw nothing wrong with her and Brown staying at

Mayekar's apartment while he was gone. She knew Mayekar had gone to Washington but

thought he planned to return. Anthony said that she and Brown took some of Mayekar's clothes

to a second-hand store to be appraised but that she did not sell anything that belonged to

Mayekar.

The trial court rejected Brown's and Anthony's testimony as incredible and found Brown

guilty of statutory burglary, grand larceny, and conspiracy to commit both burglary and grand

larceny. The trial court sentenced Brown to a total of nineteen years of imprisonment with

seventeen years and nine months suspended. This appeal followed.

ANALYSIS

Brown argues that the evidence was insufficient to prove his guilt of the offenses beyond

a reasonable doubt. "When reviewing the sufficiency of the evidence, '[t]he judgment of the

trial court is presumed correct and will not be disturbed unless it is plainly wrong or without

evidence to support it.'" *Goldman v. Commonwealth*, 74 Va. App. 556, 562 (2022) (quoting

*Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). On appeal, we ask whether "*any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Pooler v. Commonwealth*, 71 Va. App. 214, 220 (2019) (quoting *Hamilton v. Commonwealth*, 69

Va. App. 176, 195 (2018)). "If there is evidentiary support for the conviction, 'the reviewing

court is not permitted to substitute its own judgment, even if its opinion might differ from the

conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App.

149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

*Burglary*

To establish Brown's guilt of statutory burglary, the Commonwealth was required to

prove that he "committed a breaking and entering of a dwelling of another with intent to

commit" larceny there. *Pooler*, 71 Va. App. at 220; *see* Code § 18.2-91. In challenging the burglary conviction, Brown maintains that he had Mayekar's permission to enter the apartment during Mayekar's absence because Mayekar previously had let him stay there overnight. "[A] person may not unlawfully break and enter a home in which [he or] she has the right to occupy." *Pooler*, 71 Va. App. at 221 (quoting *Justus v. Commonwealth*, 274 Va. 143, 155 (2007)). Further, a breaking can occur by "[m]erely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force." *Id.* at 222.

In finding Brown guilty of all the charged offenses, the trial court credited the Commonwealth's evidence and rejected Brown's testimony. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). The trial court thus rejected Brown's argument that he entered the apartment with Mayekar's permission after Mayekar left for Washington.

In *Pooler*, 71 Va. App. at 218-19, the defendant was charged with burglary after she kicked in her former boyfriend's door and assaulted his friend. She claimed that she resided at the victim's home, and he had permitted her to stay at his home overnight on occasion. *Id.* at

218.  On appeal, this Court rejected the defendant's challenge to her burglary conviction, finding that it was "undisputed that [the defendant] had no property interest in the residence; she did not own the residence nor lease any portion of it." *Id.* at 222.  Although the defendant "occasionally spent the night with [the victim] she had no legally cognizable special relationship to him." *Id.* "Therefore, she had no possessory interest in the residence and no right to occupy." *Id.*

Similar to *Pooler*, the Commonwealth's evidence established that Brown had no right to occupy Mayekar's apartment when he was away.  Mayekar left his apartment locked and in good order, and no one had permission to go there in his absence.  Although he allowed Brown to spend the night there on a few occasions, Mayekar did not give Brown or Anthony a key to the apartment and invite them to come and go at will.  The fact that there were no signs of forced entry is of no moment, as Mayekar had had spare keys in the apartment when Brown and Anthony visited there.  Brown had no property interest in the apartment and no "legally cognizable special relationship" to Mayekar.  Accordingly, the trial court was entitled to conclude beyond a reasonable doubt that Brown had no right to occupy Mayekar's residence and that he was guilty of statutory burglary.

### Grand Larceny

"[L]arceny is a common law crime . . . defined . . . as 'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.'" *Creamer v. Commonwealth*, 64 Va. App. 185, 205 (2015) (alterations in original) (quoting *Carter v. Commonwealth*, 280 Va. 100, 104-05 (2010)).  "The element of criminal intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the defendant and any statements made by him." *Marsh v. Commonwealth*, 57 Va. App. 645, 651 (2011) (quoting *Tarpley v. Commonwealth*, 261 Va. 251, 256 (2001)).

Brown argues that the Commonwealth failed to prove that he possessed the intent to steal Mayekar's property because he had a reasonable belief that it was abandoned. "The claim-of-right defense requires a predicate showing of 'good faith,' a *bona fide* belief by the taking party that []he has some legal right to the property taken." *Groves v. Commonwealth*, 50 Va. App. 57, 63 (2007) (citations omitted). "Where the evidence is conflicting the question of *bona fides* is for the trier of the facts, in this case the court." *Id.* (quoting *Pierce v. Commonwealth*, 205 Va. 528, 534 (1964)). "[A] claim-of-right defense relies heavily on factfinding." *Id.* "When successful, a claim-of-right defense negates the defendant's *animus furandi*—the 'intent to steal' *mens rea* element of larceny." *Id.* (quoting Rollin M. Perkins, *Criminal Law* 265-66, 271 (2d ed. 1969)).

As noted above, it was within the trial court's purview as fact finder to credit the Commonwealth's evidence, reject Brown's testimony, and determine that no credible evidence supported a claim that Mayekar's property was abandoned. To the contrary, Mayekar left his apartment locked and in good order when he left for Washington. He did not tell Brown that he did not plan to return to the apartment. When he returned, he found his apartment ransacked and his property stolen. The evidence thus proved that Brown, knowing Mayekar was out of town, seized the opportunity to enter the apartment, gather some of Mayekar's suits, shoes, and other clothing, and sell them. Brown and Anthony were even wearing some of Mayekar's clothing when they encountered him upon his return. Upon these facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that Brown had the intent to steal Mayekar's property and that he was guilty of larceny.

### *Conspiracy*

The extent of Brown's argument concerning the convictions for conspiracy is that "because the evidence was not sufficient to prove that he possessed the intent to commit burglary

or grand larceny, he cannot be convicted of the related conspiracies to commit those offenses." Brown's sole contention concerning the conspiracy convictions is linked to the sufficiency of the evidence to sustain the burglary and larceny convictions. Having concluded that the evidence proved burglary and larceny beyond a reasonable doubt, we need not further consider this question on appeal.

CONCLUSION

Because the circuit court rejected Brown's testimony that he had permission to be in the apartment and thought Mayekar abandoned the clothing, we find that the evidence was sufficient to prove Brown's guilt beyond a reasonable doubt. Thus, we affirm his convictions.

*Affirmed*.