GERALD B. AND SHARON S. CRUEA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cruea v. Commissioner
Docket No. 26283-82.
United States Tax Court
T.C. Memo 1985-553; 1985 Tax Ct. Memo LEXIS 77; 50 T.C.M. (CCH) 1377; T.C.M. (RIA) 85553; November 6, 1985. W. Joseph Owen, III, for the petitioners. Scott Anderson, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' 1979 Federal income taxes in the amount of $7,442.35 and a section 6653(b) [1] fraud addition in the amount of $3,721.18. The issues for decision are as follows: [2]
(1) The amount of income petitioners must recognize from petitioner Sharon *79 S. Cruea's embezzlement activities; (2) Whether petitioner Gerald B. Cruea qualifies for innocent spouse treatment under section 6013(e); and (3) Whether petitioners are liable for the addition to tax under section 6653(b) for fraud. FINDINGS OF FACT Most of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Gerald B. Cruea (Mr. Cruea) and Sharon S. Cruea (Mrs. Cruea), husband and wife, resided at 1124 Wilderness Road, Richmond, Virginia, at the time they filed their petition in this case. Mr. and Mrs. Cruea filed a joint 1979 Federal income tax return (Form 1040). Sometime during 1969, Mrs. Cruea began working in the Reimbursement Section *80 of the Patient Accounting Department of the Medical College of Virginia (MCV), a part of Virginia Commonwealth University. The Patient Accounting Department at MCV maintains computerized patient accounts to record patient billings and payments. Because of overlapping payments made by patients and subsequent direct reimbursements of medical expenses by the patients' insurance companies, some of MCV's patients have credit balances in their accounts and are therefore due refunds from MCV. It is the general policy of MCV not to refund a credit balance in a patient's account unless the patient requests such a refund. Beginning in late June of 1979, Mrs. Cruea began searching the Patient Accounting Department's files for inactive patient accounts with relatively substantial credit balances. She manipulated those accounts on the Department's computer to consolidate them and then transfer their credit balances to accounts that she had established for fictitious patients or patients who were not due refunds. Mrs. Cruea then caused checks to be made payable and sent to such individuals. The following table shows the dates, amounts, and payees of such checks: Check No.
Date
Amount
Payee
1
7-25-79
$ 3,154.95
J. B. Cruea
2
8-23-79
7,856.76
G. B. Cruea
3
8-28-79
3,747.29
G. O. Cruea
4
7-26-79
614.10
Delores Edwards
5
7-26-79
1,375.90
Helen L. Covey
6
9-14-79
4,283.90
Delores Edwards
Total:
$21,032.90
*81 Mrs. Cruea caused checks numbered 1 and 2 in the above table to be sent to an address from which her sister had recently moved. When the sister received the checks, she gave them to Mrs. Cruea. Mrs. Cruea caused check No. 3 to be sent to the mother of one of her friends. When the check was delivered, the friend gave it to Mrs. Cruea. After receiving these three checks totalling $14,759, Mrs. Cruea endorsed and cashed them and used the proceeds for her own personal benefit. Delores Edwards is Mrs. Cruea's aunt. Mrs. Cruea caused checks numbered 4 and 6 to be sent to her aunt. The aunt endorsed and cashed the checks totalling $4,898 and used the proceeds for her own personal benefit. Helen L. Covey is Mrs. Cruea's mother. Mrs. Cruea caused check No. 5 to be sent to her mother. The mother endorsed and cashed the check for $1,375.90 and used the proceeds for her own personal benefit. Petitioners kept no records of any of these checks. On October 11, 1979, James R. Johnson (Mr. Johnson), Director of Internal Audit for MCV and Virginia Commonwealth University, interviewed Mrs. Cruea. At the time of the interview, Mr. Johnson suspected that Mrs. Cruea had manipulated MCV patient *82 accounts so that she could embezzle funds from MCV through those accounts. Shortly after that interview, Mrs. Cruea attempted to commit suicide. After this attempt, she was admitted to the psychiatric ward at St. Mary's Hospital in Richmond for one week. In October of 1979, Mr. Johnson reported to the Virginia State Police his suspicion that Mrs. Cruea was embezzling money from MCV. On October 29, 1979, Mr. Cruea retained W. Joseph Owen, III (Mr. Owen), to represent Mrs. Cruea with respect to the allegations that she had embezzled funds from MCV patient accounts. On January 17, 1980, Investigator Charles D. Bryant (Investigator Bryant) of the Virginia State Police interviewed Mrs. Cruea. Mr. Owen was present with Mrs. Cruea during the interview. By that date, Investigator Bryant had discovered all of the above-listed checks that Mrs. Cruea had caused to be written. Also by that date, Mrs. Cruea and her attorney, Mr. Owen, knew the total amount of checks that Investigator Bryant had determined Mrs. Cruea had caused to be written. Investigator Bryant completed his investigation on March 14, 1980. During the period from October 29, 1979, when Mr. Cruea retained Mr. Owen to *83 represent his wife, to April 10, 1980, when Mr. Cruea and his wife signed their 1979 joint tax return, Mr. Cruea met with Mr. Owen three or four times. During these meetings, Mr. Cruea and Mr. Owen discussed Mrs. Cruea's embezzlement activities and the investigation thereof. Mr. Cruea first learned about his wife's embezzlement activities shortly after the investigation began and no later than November or December of 1979. Sometime before April 4, 1980, Mr. Cruea provided S. L. Bartling of H. & R. Block Company with information to prepare petitioners' 1979 tax return. At the time that Mr. Cruea provided S. L. Bartling with such information, Mr. Cruea knew that Mrs. Cruea was under investigation for embezzling money from MCV; Mr. Cruea knew that his wife had in fact embezzled a substantial amount of money from MCV. On April 4, 1980, S. L. Bartling completed the preparation of petitioners' 1979 return. On April 10, 1980, both petitioners signed their 1979 joint return. At the time petitioners signed their 1979 return, both of them knew that Mrs. Cruea had embezzled money from MCV that was not reported as income on the return. On or before April 15, 1980, petitioners filed their *84 1979 joint return with the Internal Revenue Service Center at Memphis, Tennessee. On May 5, 1980, Mrs. Cruea was indicted on six counts of grand larceny under Va. Code sec. 18.2-95, one indictment for each check in the table set forth above. Sometime in May of 1980, mrs. Cruea again attempted to take her own life, and was admitted to a psychiatric hospital for a brief time thereafter. On June 30, 1980, Mrs. Cruea was found guilty of grand larceny as charged in each of the six grand larceny indictments. On August 11, 1980, Mrs. Cruea was sentenced to four years of confinement in the state penitentiary for those crimes. The judge's sentencing order recommended psychiatric treatment, but the record does not indicate whether or not Mrs. Cruea received such treatment while in the state penitentiary. Petitioner's aunt, Delores Edwards, was indicted on two counts of grand larceny under Va. Code sec. 18.2-95, to which she pled guilty. On June 30, 1980, she was sentenced. The court suspended the imposition of a sentence during the aunt's good behavior provided, inter alia, that she be placed on supervised probation, and that she make *85 restitution to MCV in the amount of $4,898 and pay court costs. Petitioner's mother, Helen L. Covey, was indicted on one count of grand larceny under Va. Code sec. 18.2-95, to which she pled guilty. On July 1, 1980, she was sentenced. The Court suspended the imposition of a sentence during the mother's good behavior provided, inter alia, that she be placed on supervised probation, and that she make restitution to MCV and pay court costs. Before and during 1979, Mrs. Cruea maintained the family checkbook and paid all of the bills. Mr. Cruea simply endorsed his paycheck and gave it to Mrs. Cruea. At the time of the trial of this case, petitioners had lived at 1124 Wilderness Road, Richmond, Virginia, for about eight years. They paid about $39,000 for their home, which is mortgaged. Petitioners made no improvements to their house during 1979 and early 1980. During that period, petitioners did not buy any automobiles, take any trips, or make any unusual expenditures. On their 1979 joint tax return, petitioners reported total gross income in the amount of $27,011. This amount consisted solely of wages, salaries, and state and local income tax refunds. *86 Petitioners did not report on their return any of the money Mrs. Cruea embezzled from MCV. In a statutory notice of deficiency dated September 21, 1982, respondent determined that the $21,032 [3] Mrs. Cruea embezzled from MCV was income to petitioners. Respondent also determined that all or a part of the resulting underpayment of tax was due to fraud, and therefore determined an addition to the tax under section 6653(b). ULTIMATE FINDINGS OF FACT 1. Petitioners omitted from their 1979 joint tax return income in the amount of the $21,032 that Mrs. Cruea had embezzled from the Medical College of Virginia. 2. Mr. Cruea knew that the embezzlement income had been omitted and that there was accordingly an underpayment of tax for the year. 3. The underpayment of tax was due to petitioners' fraud. OPINION Amount of Embezzlement Income
The first issue for decision is the amount of income petitioners must recognize from Mrs. Cruea's embezzlement activities. *87 Petitioners concede that they received gross income from such activities in the amount of $14,759. That is the total amount of the three checks that Mrs. Cruea caused to be sent to her sister and to her friend's mother, which checks Mrs. Cruea received from those individuals and then endorsed and cashed. Mrs. Cruea used the proceeds of those three checks for her own personal benefit. Petitioners argue, however, that the checks that Mrs. Cruea caused to be sent to her aunt and to her mother in the total amount of $6,273.90 should not be included in petitioners' gross income. The basis for their contention is that petitioners never received the funds. Mrs. Cruea's aunt and mother endorsed, cashed, and used the proceeds of their respective checks for their own personal benefit. Petitioners also point out that both the aunt and the mother were required as part of their sentences in their criminal cases to make restitution of such amounts to MCV. Section 61(a) defines gross income as "all income from whatever source derived * * *." Section 1.61-14(a), Income Tax Regs., provides that "[i]llegal gains constitute gross income." Moreover, it is well-settled that embezzled funds constitute *88 gross income to the embezzler in the year the funds are misappropriated. James v. United States,366 U.S. 213 (1961); Solomon v. Commissioner,732 F. 2d 1459, 1460-1461 (6th Cir. 1984), affg. per curiam a Memorandum Opinion of this Court; Rappaport v. United States,583 F. 2d 298, 302 (7th Cir. 1978); Bailey v. Commissioner,420 F. 2d 777, 778 (5th Cir. 1969), affg. per curiam 52 T.C. 115 (1969); Nerem v. Commissioner,41 T.C. 338, 341-344 (1963). The fact that an embezzler directs embezzled funds to another person rather than using them for her own personal benefit does not prevent such funds from being gross income to the embezzler. United States v. Lippincott,579 F. 2d 551, 552 (10th Cir. 1978); Geiger's Estate v. Commissioner,352 F. 2d 221, 231-232 (8th Cir. 1965), affg. a Memorandum Opinion of this Court, cert. denied 382 U.S. 1012 (1966); Bailey v. Commissioner,supra, 52 T.C. at 118-119. This is so even if the victim of the embezzlement has a right to recover the embezzled funds from the recipients. James v. United States,supra,366 U.S. at 219; *89 Solomon v. Commissioner,supra,732 F. 2d at 1460-1461; Geiger's Estate v. Commissioner,supra,352 F. 2d at 232. Thus, while the record in this case does not disclose whether or not any restitution was ever made to MCV subsequent to 1979, any such restitution would not avail Mrs. Cruea in any event. Mrs. Cruea was found guilty of six counts of grand larceny under Va. Code sec. 18.2-95[4] with respect to the three checks she caused to be sent to her aunt and to her mother, as well as the three checks she caused to be sent to her sister and her friend's mother, which she eventually received from them. Thus, the total amount of all six checks, $21,032 (see n. 3, supra), was gross income to petitioners. As then Circuit Judge, now Justice, Blackmun so aptly stated in Geiger's Estate v. Commissioner,supra,352 F. 2d at 231-232: The taxpayers' position in effect is that, technically, these funds flowed direct from the bank to the outside beneficiaries and did not pass through Geiger hands. That may be one way to describe it. Another, equally valid, is that the funds came to Mrs. Geiger and *90 were passed out or made available by her to the beneficiaries. These beneficiaries were the objects of her bounty, not the bank's. She was the force and the fulcrum which made those benefits possible. She assumed unto herself actual command over the funds. This is enough. Corliss v. Bowers,281 U.S. 376, 378, 50 S. Ct. 336, 74 L. Ed. 916 (1930). We are not sympathetic with the claim that, because she may not have used the funds for personal needs, she is not to be taxed. She enjoyed benefits of a kind which obviously must have loomed large in her mind and have been important to her--status as the beneficent donor to good causes and favored acquaintances, a reputation as an available friend in need, the acquisition, with respect to a "loan", of the resulting obligation to her, and the like. Helvering v. Horst,supra, pp. 116-117 of 311 U.S., 61 S. Ct. 144. It would be ironical to hold otherwise. *91 Mr. Cruea as an Innocent Spouse
The next issue for decision is whether Mr. Cruea qualifies for innocent spouse treatment under section 6013(e), so as to be relieved from liability for petitioners' deficiency, interest thereon, and the addition to tax. Generally, if a husband and wife make a joint return, their liability with respect to the tax is joint and several. Sec. 6013(d)(3). However, section 6010(e) [5] provides an exception to the general rule of joint and several liability by relieving the so-called innocent spouse from liability for tax, interest thereon, and additions to tax. Sec. 6013(e)(1). To qualify for innocent spouse relief, *92 the taxpayer must show: (1) that on the joint return for the year in issue, there is a substantial understatement [6] of tax attributable to grossly erroneous items [7] of the taxpayer's spouse; (2) that in signing the return, the taxpayer did not know, and had no reason to know, of the substantial understatement; and (3) that taking into account all of the facts and circumstances, it is inequitable to hold the taxpayer liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1). The taxpayer bears the burden of proving that all of the requirements of section 6013(e) have been met. Ratana v. Commissioner,662 F. 2d 220, 224 (4th Cir. 1981); Adams v. Commissioner,60 T.C. 300, 303 (1973); Sonnenborn v. Commissioner,57 T.C. 373, 382 (1971); Stone v. Commissioner,56 T.C. 213, 227 (1971); Rule 142(a).
Mr. Cruea says that he has satisfied *93 the statutory requirements and thus qualifies for innocent spouse treatment under section 6010(e). The only requirement we need address is whether in signing the 1979 joint return, Mr. Cruea did not know and had no reason to know that there was a substantial understatement of tax on the return. See sec. 6013(e)(1)(C). This is a question of fact. Sanders v. United States,509 F.2d 162, 165, 167-168 (5th Cir. 1975); Terzian v. Commissioner,72 T.C. 1164, 1170 (1979); Mysse v. Commissioner,57 T.C. 680, 697-699 (1972). [8]
Mr. Cruea argues that in signing petitioners' 1979 return, he did not know, or have any reason to know, that there was a substantial understatement on the return. He cites a number of Memorandum Opinions of this Court that allowed innocent spouse treatment to spouses of embezzlers, suggesting that these cases stand for the proposition that a spouse does not have reason to know of a substantial understatement until *94 the embezzler-spouse is indicted. [9] There is no such rule of law. Each of those Memorandum Opinions turned on its own particular facts. Each of those cases is clearly distinguishable from the instant case on a number of points, the most important of which is that we have found that Mr. Cruea in fact knew that Mrs. Cruea was being investigated for embezzling money from MCV at least three months before he signed and filed petitioners' 1979 return. Nonetheless, Mr. Cruea argues that he is still entitled to relief under section 6013(e), citing Johnson v. Commissioner,T.C. Memo. 1980-569. In Johnson, the taxpayer's wife had misappropriated funds from her employer. Before the taxpayer signed the joint return for the year in issue, his wife, responding to a summons, *95 appeared at a police station and disclosed her misappropriations to the authorities. She appeared at the police station again, and gave a more detailed account of her actions. The taxpayer did not accompany his wife to the police station but was aware of her appearances. Before his wife was formally charged with forgery arising from her embezzlement activities, the taxpayer did not know either the specific reasons for her appearances or the contents of her various statements to the police. The fact that the taxpayer was aware of his wife's appearances at the police station did not convince us that the taxpayer had reason to know of the omitted income. Our holding in Johnson v. Commissioner,supra, is of no avail to Mr. Cruea. Unlike the taxpayer in Johnson, Mr. Cruea knew that his wife was being investigated specifically for embezzlement. Mr. Cruea, in fact, retained an attorney to represent Mrs. Cruea in October of 1979. Moreover, he also met with the attorney three or four times to discuss his wife's embezzlement activities and the investigations thereof. These meetings took place sometime between October of 1979 and April of 1980, before Mr. Cruea *96 signed and filed petitioners' 1979 return. By January 17, 1980, both Mrs. Cruea and her attorney knew of the total amount of checks that the investigator had determined that Mrs. Cruea had caused to be written. These facts lead us to the inescapable conclusion that at the time Mr. Cruea signed and filed the 1979 joint tax return with his wife, he knew that she had embezzled money from MCV and that this money was not reported on their 1979 return as income. [10] Consequently, Mr. Cruea has failed to satisfy one of the requirements of section 6013(e) and is not entitled to relief as an innocent spouse. *97 Fraud Addition
The final issue for decision is whether petitioners are liable for the section 6653(b) fraud addition. [11] Respondent bears the burden of establishing fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The fraud envisioned by section 6653(b) is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Candela v. United States,635 F. 2d 1272 (7th Cir. 1980); Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Mitchell v. Commissioner,118 F. 2d 308 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939), followed on remand 45 B.T.A. 822 (1941); Wilson v. Commissioner,76 T.C. 623, 634 (1981), Supplemental Opinion 77 T.C. 324 (1981). Respondent must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,supra,398 F. 2d at 1004; Webb v. Commissioner,394 F. 2d 366, 377 (5th Cir. 1968), *98 affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 112-113 (1956). Fraud is a question of fact to be determined on the basis of the entire record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), cert. denied 389 U.S. 912 (1967), affg. 37 T.C. 703 (1962); *99 Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F. 2d 1383 (8th Cir. 1978); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Fraud can seldom be established by direct proof of the taxpayer's intention; therefore, the taxpayer's entire course of conduct must be considered, and fraudulent intent can be established by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner,supra,67 T.C. at 200; Stone v. Commissioner,supra,56 T.C. at 223-224; Otsuki v. Commissioner,supra,53 T.C. at 105-106. Specifically, we must consider the taxpayer's conduct and other circumstances surrounding the preparation, signing, and filing of the alleged fraudulent return. Foster v. Commissioner,391 F. 2d 727, 733 (4th Cir. 1968). See also Wilson v. Commissioner,supra,76 T.C. at 634. Petitioners argue that respondent has not met his burden of proving petitioners' fraudulent intent. They argue that in determining whether they are liable for the fraud addition, *100 the key element to be considered is whether they knew the money had been stolen. Specifically, petitioners contend that Mrs. Cruea could not have possessed the required intent because she suffered from severe emotional and mental disorders during the period from October of 1979 through April of 1980. They suggest that Mrs. Cruea's two suicide attempts are evidence of such disorders. Petitioners point out that Mrs. Cruea was hospitalized after each attempt, and claims to be unable to remember anything about her embezzlement activities. However, Mrs. Cruea's unsuccessful suicide attempts do not persuade us that she did not possess the requisite intent to evade tax at the time she signed petitioners' 1979 return. Mrs. Cruea first attempted suicide in October of 1979, about the time the investigation of her embezzlement activities began. She again tried to take her own life in May of 1980, about the time of her indictment and after the 1979 return had been filed. After each suicide attempt, Mrs. Cruea spent a brief time in a psychiatric award. At the trial before this Court, Mr. Cruea alluded vaguely to his wife's headaches and "mental problem for years." Petitioners' briefs speak *101 of "severe emotional and mental disorders" and "severe psychiatric and emotional problems," all singularly unsupported by the evidence of record. No medical records or medical witnesses were offered at the trial. On the other hand, Mrs. Cruea's embezzlement activities required considerable knowledge and use of MCV's computer system. Proof of her purported lack of memory of any of those activities would require something more than petitioners' vague, unpersuasive, self-serving statements. By January 17, 1980, Mrs. Cruea and her attorney knew the total amount of checks that the investigator had determined Mrs. Cruea had fraudulently caused to be written. The investigator completed his investigation on March 14, 1980. Mrs. Cruea was indicted on six counts of grand larceny on May 5, 1980. Although her second suicide attempt occurred about that time, the record does not indicate that her criminal trial was delayed or that her alleged mental problem was even raised during the criminal trial. On June 30, 1980, she was found guilty of grand larceny in each indictment, and, on August 11, 1980, she was sentenced for those crimes. Mrs. Cruea was sentenced to confinement in a state *102 penitentiary, not a psychiatric facility. We think these facts clearly show that when Mrs. Cruea signed petitioners' 1979 return on April 10, 1980, she knew that she had embezzled money from MCV that was not reported on the return as income. Furthermore, we simply do not believe Mrs. Cruea's purported inability to remember the circumstances surrounding her embezzlement activities, which petitioners also rely on as indicating her inability to possess the requisite intent to evade. Mrs. Cruea testified at the trial of this case that she could not remember signing or reading the return, embezzling any funds, or any questions the investigators asked her about the embezzlement. Mrs. Cruea asserted that the only thing she remembered about the January 17, 1980 meeting she and her attorney had with the investigator was the discussion they had about her husband's employment. We find Mrs. Cruea's testimony that she was unable to remember anything else about the meeting inherently incredible. We simply do not believe Mrs. Cruea's convenient lack of memory. Thus, the record as a whole is devoid of any competent or persuasive evidence supporting petitioners' assertion that Mrs. Cruea did *103 not have the mental capacity to form the requisite intent to evade tax at the time she signed petitioners' 1979 tax return. Compare Staudt v. Commissioner,216 F. 2d 610 (4th Cir. 1954), affg. a Memorandum Opinion of this Court; Wilson v. Commissioner,supra;Farber v. Commissioner,43 T.C. 407 (1965), Supplemental Opinion 44 T.C. 408 (1965); Hollman v. Commissioner,38 T.C. 251 (1962). [12] Respondent has carried his burden of proof as to Mrs. Cruea. [13]
*104 With respect to Mr. Cruea, petitioners argue that he had no knowledge of the embezzlement at the time he signed petitioners' 1979 return. Thus, they contend he could not have possessed the requisite intent to evade tax. However, Mr. Cruea admitted at the trial of this case that he knew that Mrs. Cruea was under investigation for embezzlement for at least three months before he signed petitioners' 1979 return. Thus, we are satisfied that he had knowledge sufficient to allow him to possess an intent to evade tax. Having determined that Mr. and Mrs. Cruea both had sufficient knowledge and mental capacity to possess the requisite intent to defraud, we turn now to the question of whether their underpayment of tax was due to fraud, i.e., whether they failed to include in income the amounts Mrs. Cruea embezzled from MCV with an intent to evade tax. After reviewing the record as a whole, keeping in mind the principles regarding fraud set forth above, we conclude that petitioners possessed the requisite intent. In making our determination, we are entitled to consider as a part of the evidence, Mrs. Cruea's conviction for embezzlement. Rogers v. Commissioner,111 F. 2d 987, 989 (6th Cir. 1940). *105 While evidence that a taxpayer defrauded another may not be direct evidence of intent to evade tax, the Court is entitled to consider such evidence because it is a fair inference that a person who misappropriates another's funds to her own use through misrepresentation and concealment will not hesitate to misrepresent and conceal receipt of those same funds from the Government with intent to evade tax. Rogers v. Commissioner,supra,111 F. 2d at 989; McGee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F. 2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). The failure to report embezzled funds as income is evidence of an attempt to conceal that income with the intent to evade tax. See McGee v. Commissioner,supra,61 T.C. at 260-261. [14] Mr. Cruea had petitioners' 1979 return prepared, and both Mr. and Mrs. Cruea signed such return, knowing that Mrs. Cruea had embezzled funds from MCV and that such funds were not reported on the return as income.
*106 Mr. and Mrs. Cruea also failed to keep records of the funds Mrs. Cruea embezzled from MCV. This failure is also some evidence of an intent to evade tax. Wilson v. Commissioner,supra,76 T.C. at 633-634. Large discrepancies between the actual amount of income and the amount of income reported may also be evidence of fraudulent intent. Rogers v. Commissioner,supra,111 F. 2d at 989. Petitioners reported gross income in the amount of $27,011 on their 1979 return. They omitted embezzled funds in the amount of $21,032, which we have determined to be income to petitioners in 1979. Finally, petitioners' lack of veracity and evasiveness under oath weigh heavily against them. Six times in the trial before this Court, Mr. Cruea testified that he did not know that Mrs. Cruea was being investigated for embezzlement until after either petitioners filed their 1979 return (on or before April 15, 1980), or until Mrs. Cruea was indicted (on May 5, 1980). However, in response to the Court's direct questioning at the very and of the trial, Mr. Cruea admitted that from the very outset, and no later than November or December of 1979, he knew that the *107 investigation concerned his wife's embezzling funds from MCV. We have already noted that we did not believe Mrs. Cruea's lack of memory story. Such willingness to make false statements under oath, where it is financially advantageous to do so, is further evidence of intent to evade tax. Foster v. Commissioner,supra,391 F. 2d at 733. Thus, taken as a whole, the evidence of record clearly and convincingly establishes that petitioners omitted embezzlement income from their 1979 return with intent to evade tax. They are therefore liable for the section 6653(b) fraud addition. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent's adjustments to petitioners' medical expense and sales tax deductions are automatic adjustments that depend solely upon resolution of the first issue stated in the text.↩
3. The parties stipulated that Mrs. Cruea embezzled a total of $21,032.90 from MCV. Respondent included only $21,032 in petitioners' income in his statutory notice of deficiency. We will ignore this minor discrepancy.↩
4. As in effect during 1979, Va. Code sec. 18.2-95 provided as follows: § 18.2-95. Grand larceny defined; how punished.--Any person who: (1) Commits larceny from the person of another of money or other thing of value of five dollars or more, or (2) Commits simple larceny not from the person of another of goods and chattels of the value of one hundred dollars or more, shall be deemed guilty of grand larceny which shall be punishable by confinement in the petitentiary for not less than one or more than twenty years or in the discretion of the jury, or judge sitting without a jury, be confined in jail for a period not exceeding twelve months or fined not more than one thousand dollars, either or both. Va. Code sec. 18.2-95 was amended by 1980 Va. Acts c. 175. Larceny is the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently. Skeeter v. Commonwealth,217 Va. 722, 232 S.E. 2d 756, 758 (1977). It is a common law crime regulated by statute. Smith v. Cox,435 F. 2d 453, 457 (4th Cir. 1970), vacated and remanded on other grounds 404 U.S. 53↩ (1971).
5. After trial and briefing herein, section 6013(e) was amended by section 424(a) of the Tax Reform Act of 1984, Division A of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 801-802, 1984-3 (Vol. 1) C.B. 2, 309-310. This amendment applies to all taxable years to which the Internal Revenue Codes of 1954 and 1939 apply. Sec. 424(c)(1) of the Tax Reform Act of 1984, supra,↩ 98 Stat. at 803, 1984-3 (Vol. 1) C.B. at 311. We will apply this liberalized innocent spouse provision in deciding the instant case.
6. A "substantial understatement" is an understatement that exceeds $500.Sec. 6013(e)(3). An understatement is defined in section 6661(b)(2)(A). ↩
7. Grossly erroneous items include, among other things, omissions from gross income. Sec. 6013(e)(2)(A).↩
8. See also Dickey v. Commissioner,T.C. Memo. 1985-478; Walker v. Commissioner,T.C. Memo. 1985-278; Cox v. Commissioner,T.C. Memo. 1982-723↩.
9. See Johnson v. Commissioner,T.C. Memo. 1980-569; Whitten v. Commissioner,T.C. Memo. 1980-245; Grosso v. Commissioner,T.C. Memo. 1980-186, affd. without published opinion 676 F. 2d 685 (3d Cir. 1982); Bonhag v. Commissioner,T.C. Memo. 1980-138; Anderson v. Commissioner,T.C. Memo. 1975-104↩.
10. Even if it could somehow be said that Mr. Cruea did not know that Mrs. Cruea had embezzled funds from MCV that were not reported as income on petitioners' 1979 return, he most certainly had reason to know of such facts. In determining whether an individual reasonably should have known of the omitted income, the standard to be applied is whether a reasonable person under the taxpayer's circumstances at the time of signing the return could be expected to know of the omission. Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). See also Sanders v. United States,509 F. 2d 162, 167 (5th Cir. 1975). A spouse cannot close his eyes to facts that might give him reason to know of the unreported income. Mysse v. Commissioner,57 T.C. 680, 699↩ (1972). Mr. Cruea's admission that he knew about the investigation into his wife's embezzlement activities and his meetings with her attorney to discuss such activities and investigation before signing petitioners' 1979 return clearly indicate that at the time he signed the return, he at a bare minimum had reason to know that Mrs. Cruea had embezzled money from MCV that was not reported on petitioners' return as income.
11. As in effect during 1979, section 6653(b) provided as follows: (b) Fraud.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. Section 6653(b) was amended by section 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 616-617, 1982-2 C.B. 462↩, 569, applicable to taxes the last date prescribed for payment of which is after September 3, 1982. The amendment placed the quoted language in sections 6653(b)(1) and (4), and added another addition to the tax in section 6653(b)(2).
12. See also Simonelli v. Commissioner,T.C. Memo. 1985-12; Klein v. Commissioner,T.C. Memo. 1984-392↩. 13. hile respondent must prove fraud by clear and convincing evidence, respondent does not have an affirmative obligation in every fraud case to establish the taxpayer's mental capacity to form a fraudulent intent. At most, where a taxpayer has produced evidence of her mental illness, respondent may have to meet that evidence with proof that the false returns were not the product of mental disease. Compare Hollman v. Commissioner,38 T.C. 251 (1962) with Farber v. Commissioner,43 T.C. 407↩ (1965). Here petitioners raised the issue as to Mrs. Cruea's purported lack of such mental capacity for the first time at the trial. In fact, the petition in this case did not challenge the fraud addition, and the parties stipulated before trial that the only issues in dispute were the amount of embezzlement income to be reported by petitioners and whether or not Mr. Cruea was entitled to innocent spouse treatment.Under our rules, any issue not raised in petitioners' assignment of errors is deemed to be conceded. Rule 34(b)(4). Nonetheless, the fraud issue was tried by consent, and respondent shouldered the usual burden of proving fraud by clear and convincing evidence. That burden does not include affirmatively establishing in the first instance Mrs. Cruea's mental capacity to form a fraudulent intent. Petitioners' efforts to suggest, primarily in post-trial briefs, that Mrs. Cruea did not possess such capacity were merely arguments without factual support.
14. See also McCool v. Commissioner,T.C. Memo. 1984-33; Afshar v. Commissioner,T.C. Memo. 1981-241, affd. without published opinion 692 F. 2d 751 (4th Cir. 1982), cert. denied 461 U.S. 928↩ (1983).