37 F.3d 1496
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steve A. HORTON, Defendant-Appellant.
 No. 94-5060.
 United States Court of Appeals, Fourth Circuit.
 Argued July 14, 1994.
Decided Oct. 11, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Richard B. Kellam, Senior District Judge. (CR-93-110)
 John Warren Hart, Beaton & Hart, P.C., Virginia Beach, Va., for appellant.
 George Maralan Kelley, III, Asst. U.S. Atty., Norfolk, Va., for appellee.
 On Brief: Helen F. Fahey, U.S. Atty., Norfolk, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Steven A. Horton was indicted by a Grand Jury in the Eastern District of Virginia on August 18, 1993. The Indictment contained three counts: 1) conspiracy to commit larceny at the Greenbriar Parkway branch of Commerce Bank in Chesapeake, Virginia on January 22, 1993, and to rob the Lynnhaven Parkway branch of the Naval Air Federal Credit Union in Virginia Beach, Virginia on May 28, 1993; 2) bank larceny at the Commerce Bank on January 22, 1993; and 3)attempted bank robbery at the Naval Air Federal Credit Union on May 28, 1993. Finding no error in the district court's sentencing procedure, we affirm the sentence imposed on Horton pursuant to his guilty plea and ensuing convictions.
 
 
 2
 Together with an accomplice, Glen Houseman, Horton took $20,000 from Frederick Soriano, an employee of Commerce Bank, as Soriano left the bank to load an ATM machine. Soriano provided Horton and Houseman with information about Commerce Bank's procedures, the amount of money that would be loaded into the ATM machine, and how Soriano would be carrying the money bag. Soriano shared in the money after the theft was completed.
 
 
 3
 Houseman and Horton then planned to take money from the ATM at the Naval Air Federal Credit Union. At trial, Houseman testified that he and Horton had discussed what level of force would be necessary to carry out their plan and decided that Horton's youth and physical strength, combined with surprise, would be sufficient. Although they attempted to carry out their plan, they did not succeed, and no force was actually used. On August 16, 1993, Houseman pleaded guilty to a criminal information alleging both larceny of Commerce Bank and a conspiracy to rob the Naval Air Federal Credit Union.
 
 
 4
 Horton pleaded guilty to the larceny of Commerce Bank, but did not plead guilty to the robbery charges. The jury convicted him of Count One which charged him with conspiring to commit both the larceny of Commerce Bank and the robbery of the Naval Air Federal Credit Union. As to Count Three, the attempted robbery charge, the jury convicted Horton of attempted larceny in accordance with the jury instruction on that lesser included offense.
 
 
 5
 The initial presentence report, filed on December 21, 1993, recommended a base offense level of 14 and a sentencing range of 15-21 months. That report calculated Horton's base offense level using the larceny section of the Sentencing Guidelines, Sec. 2B1.1(a). Both the defendant and the government made objections to the report. The amended report, filed on January 6, 1994, recommended a base offense level of 21 and a sentencing range of 37-46 months. That report accepted the government's argument that the robbery section of the guidelines should be used to calculate the base offense level on the conspiracy charge.
 
 
 6
 In accordance with the amended report, the district court calculated Horton's base offense level using the robbery section of the sentencing guidelines based on the conspiracy conviction. At the hearing, the court determined the base offense level to be 23 and sentenced Horton to 46 months imprisonment.[1] Horton has appealed his sentence, claiming that the jury's general verdict does not support a finding beyond a reasonable doubt that he conspired to commit bank robbery. He also has argued that he should have received a three point reduction pursuant to U.S.S.G. Sec. 2X1.1.
 
 
 7
 The applicable provisions of the Sentencing Guidelines are found in Sec. 1B1.2(d):
 
 
 8
 A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit. Under Sec. 1B1.2(d), Horton's conspiracy conviction should be treated as if he had been convicted of conspiracy for both larceny and robbery. Application Note 5 reads:
 
 
 9
 Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.
 
 
 10
 Because the jury did not return a special verdict, particular care must be taken here to apply Sec. 1B1.2(d) to the facts of the instant case. Note 75 of Appendix C explains why the Commission added Sec. 1B1.2(d) and expounds on the meaning of Application note Number 5:
 
 
 11
 Additional commentary (Application Note 5) is provided to address cases in which the jury's verdict does not specify how many or which offenses were the object of the conspiracy of which the defendant was convicted.... In order to maintain consistency with other Sec. 1B1.2(a) determinations, this decision should be governed by a reasonable doubt standard.... Because the guidelines do not explicitly establish standards of proof, the proposed new application note calls upon the court to determine which offense(s) was the object of the conspiracy as if it were "sitting as a trier of fact."
 
 
 12
 Application Note Number 5 and Note 75 of Appendix C require the district court to find beyond a reasonable doubt that the defendant conspired to commit the object offense or offenses of the conspiracy charge. See, United States v. McKinley, 995 F.2d 1020, 1025-26 (11th Cir.1993), cert. denied, 114 S.Ct. 1552 (1994). Both parties agree that the issue before the court is whether the district court found, beyond a reasonable doubt, that Horton conspired to rob the Naval Air Federal Credit Union.
 
 
 13
 The elements of a conspiracy in violation of 18 U.S.C. Sec. 371 are 1) an agreement between two or more persons 2) to commit in concert an unlawful act, and 3) an overt act in furtherance of the conspiracy. United States v. Chorman, 910 F.2d 102, 109 (4th Cir.1990). To find a conspiracy, then, the district court, if it were sitting as a trier of fact, would have to conclude 1) that there was an agreement between Horton and Houseman 2) to commit the bank robbery at the Naval Air Federal Credit Union, and 3) that Horton had completed at least one overt act to accomplish the bank robbery, or that he had participated in such an overt act. Count I of the indictment charged a single conspiracy including both the larceny of Commerce Bank and the robbery of the Naval Air Federal Credit Union. The record contains evidence of the conspiracy and of several overt acts in furtherance of that conspiracy. The record also shows that the district court engaged in an exhaustive discussion regarding the existence of a conspiracy to rob the Naval Air Federal Credit Union and of Horton's role in that conspiracy.
 
 
 14
 Abundant evidence indicates that Horton entered into an agreement with Houseman to carry out a robbery of Naval Air Federal Credit Union, a bank at which the two men did not have a cooperative friend as a bank employee and at which they anticipated the possible necessity of force, threat, or intimidation to carry out their plan. Houseman testified that they had contemplated the level of force that would be necessary to execute the Naval Air Federal Credit Union robbery.
 
 
 15
 The theft from the Commerce Bank to which Horton pleaded guilty was a larceny because Horton had an "inside" participant, Soriano. The theft at Naval Air Federal Credit Union, however, would have been a robbery because Horton did not have an inside participant. In Virginia, an element of robbery is the intent to use force, threat, violence, or intimidation. Compare Satterfield v. Commonwealth, 105 Va. 867, 52 S.E. 979, 980 (1906), with Williams v. Kelly, 816 F.2d 939, 940 (4th Cir.1987), and Pierce v. Commonwealth, 205 Va. 528, 138 S.E.2d 28, 31 (1964). Horton would have had to employ force, violence or intimidation to take the anticipated $70,000 from unwilling and uncooperative bank employees. Houseman's testimony corroborates the fact that Horton contemplated the use of such force or intimidation. The evidence as a whole provided an ample foundation on which the court could base its conclusion that Horton conspired to rob the Naval Air Federal Credit Union.
 
 
 16
 The court questioned the government attorney extensively regarding the meaning of the jury verdict on the conspiracy count. At one point during the hearing, the district court said, "How do we know which [conspiracy] they found him guilty of, the robbery or the larceny?" The United States attorney replied, "I think you would have to find him guilty of both. It's charged as one conspiracy. The jury found him guilty of it. It must be concluded, at least logically, they found him guilty of both." A few moments later, the court reiterated its concern, "How do we know then, what they were talking about? They may have just decided it was all larceny instead of bank robbery." The government replied, "As I say, your Honor, the conspiracy count is charged as one conspiracy. It's basically an all or nothing. It says, jury, if he conspired to commit larceny and robbery, then he's guilty. Under that theory, if the jury had said, well he conspired to commit larceny, but not robbery, they would have found him not guilty." Again, the district judge came back to the question, "The only problem that concerns me in the case is that Count One charges a larceny and it charges a robbery and they found him guilty of a conspiracy. Well, for which? Conspiracy for what, robbery or larceny? And that makes a difference in the sentence."[2] Again, the government characterized Count One as an all or nothing proposition--that the jury had to find him guilty of conspiring to commit both the larceny and the robbery or acquit.
 
 
 17
 Horton argued to the district court that there was no way to determine whether the jury was convicting the defendant of conspiracy to commit larceny or robbery or both and that, under Application Note 5 to Sec. 1B1.2(d) of the Sentencing Guidelines, the court should apply the larceny section in determining the base offense level. Counsel for Horton has repeatedly emphasized the particular care mandated by Application Note 5. After exhausting the issue, the district court finally stated: What the jury has found is that there was a conspiracy. They were going to commit a larceny and they were going to commit a robbery ... I don't have any problem with that at all, in finding that the evidence justified the finding that he was guilty of a conspiracy to commit robbery....
 
 
 18
 Well, I think the evidence shows there was a conspiracy. The agreement was to commit a robbery and to commit a larceny, but the conspiracy was to commit the robbery if it was necessary to do. Whatever was necessary to do, they were going to be successful with that undertaking of robbing that bank. They were going to take by force and violence is what the intention was, grab and take away from that individual that bag. I think that's what the agreement was.[3]
 
 
 19
 The district court's comments and attention to the issue suggest, as the government has argued, that the court found beyond a reasonable doubt that the defendant had conspired to commit a robbery of the Naval Air Federal Credit Union.[4] As such, the court's calculation of the base offense level using the robbery guidelines does not constitute error.
 
 
 20
 We turn now to Horton's asserted right to a three level reduction. The district court concluded that the base offense level was properly calculated using the robbery section of the guidelines, Sec. 2B3.1--ROBBERY, and proceeded to apply Sec. 2X1.1(b)(2) under the general heading--ATTEMPT, SOLICITATION OR CONSPIRACY (NOT COVERED BY A SPECIFIC OFFENSE GUIDELINE). First, the court determined the base offense level as 20 using the substantive offense guideline Sec. 2B3.1 and made the necessary adjustments. Next, the court looked to Sec. 2X1.1 which requires consideration of specific offense characteristics.
 
 
 21
 If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.
 
 
 22
 Sec. 2X1.1(b)(2). Applying that provision to the facts to which Horton stipulated in the record, the court denied the three level reduction.
 
 
 23
 The facts to which the defendant stipulated show that he and Houseman planned to carry out a robbery of the Naval Air Federal Credit Union. They discussed the level of force that would be necessary to execute their plan. The night before the attempt, they covered the bumper stickers on Houseman's car with black tape and removed the license plate. At two or three in the morning they drove to the Naval Air Federal Credit Union where Horton drilled the lock off of an electrical closet located on the outside of a building adjoining the Naval Air Federal Credit Union. Horton planned to hide there until the tellers came to load the ATM. Realizing the space was too cramped to go through with that plan, he and Houseman eventually left to get some sleep and some breakfast at McDonald's. They returned to the parking lot near the Naval Air Federal Credit Union at about 8 a.m.
 
 
 24
 They were sitting in the parking lot of the Naval Air Federal Credit Union waiting for the tellers to arrive to put money into the ATM machine early on the morning of May 28, 1993. They expected the tellers to have approximately $70,000. The tellers arrived earlier than expected, and Houseman had to drive all the way across the parking lot at a rapid speed to reach the ATM building. Horton had the door partly open as the car neared the building so he could snatch the money bag. By the time they reached the building, the tellers had already entered the ATM booth, and the door had closed behind them. Horton and Houseman then left the parking lot, drove around considering whether to attempt to take money from another bank, and, ultimately, were arrested by the FBI with the assistance of local police.
 
 
 25
 Horton accomplished all of the necessary steps to accomplish the substantive offense, robbery, and he would have been successful had the door not closed behind the tellers who had arrived a little earlier than Horton had expected. He, therefore, was not entitled to the three point reduction.[5]
 
 CONCLUSION
 
 26
 The district court's judgment is, accordingly,
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 During the sentencing hearing, the court recognized an error in the calculation of the adjusted offense level on Worksheet A of the presentence report. The correction of that error resulted in an offense level total of 23 rather than 21
 
 
 [2]
 Throughout the colloquy the judge made it clear that he was not bothered by any potential or claimed inconsistency between the verdicts on Counts One and Three. The judge concluded that there was undoubtedly sufficient evidence to support a conviction for attempted larceny. In fact, the evidence indicated a scheme for robbery, the greater of the two offenses
 
 
 [3]
 United States v. McKinley, 995 F.2d 1020 (11th Cir.1993), cert. denied, 114 S.Ct. 1552 (1994), cited by Horton's counsel, is not to the contrary. In that case, the Eleventh Circuit vacated sentences imposed pursuant to Sec. 1B1.2 and remanded for appropriate factual findings and resentencing. The court made the following observations: "[n]otably absent from the PSIs and from the court's findings is any mention of U.S.S.G. Sec. 1B1.2 and its accompanying commentary," id. at 1026; "[n]othing in this record indicates that the court either explicitly or implicitly found beyond a reasonable doubt that the defendants conspired to export the Stinger missile and other weapons in violation of the Arms Export Control Act." Id. In the instant case, the discussion of Sec. 1B1.2 and its commentary was exhaustive, and the court explicitly noted its belief that Horton had conspired to commit robbery based on the facts of the case. The court's finding of conspiracy to rob beyond a reasonable doubt was implicit in the record
 
 
 [4]
 The test set out in the Sentencing Guidelines requires the court to find beyond a reasonable doubt that the defendant committed the crime charged. The guidelines do not require the court to find beyond a reasonable doubt that the jury found that the defendant committed the crime charged
 The district court's statements indicate that the judge was sure that the defendant conspired to commit a robbery although the court may have been unsure what the jury believed at the time it rendered a verdict. In any event, there was substantial evidence to support such a finding by the jury. The court discounted the relevance of any apparent inconsistency between the jury's verdict on Count Three and the conclusion with respect to Count One that the defendant conspired to commit both larceny and robbery.
 
 
 [5]
 Horton's argument that the fact that the $70,000 that he and Houseman intended to steal was not in the leather bag when they attempted to take the bag meant that "they were nowhere factually near the crime they intended to commit" is without merit. The relevant fact of the matter is that they intended to steal $70,000