**UNITED STATES of America,**

v.

**Gloria Margoth VASQUEZ, Carmen Blanco Cruz, and Jorge Samuel Cruz, Defendants.**

**Cr. No. 2:93–267.**

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 10, 1995.

Matthew R. Hubbell, Asst. U.S. Atty., Charleston, SC, for U.S.

Nathan P. Diamond, Miami, FL, J. Kevin Holmes, Charleston, SC, Roy Black, Miami, FL, Dale T. Cobb, Jr., Charleston, SC, Vincent Flynn, Miami, FL, Daniel A. Beck, Charleston, SC, Richard J. Diaz, Miami, FL, for defendants.

## ORDER

BLATT, Senior District Judge.

The above named defendants are charged in a six-count indictment with various crimes arising out of an unsuccessful attempt, on or about February 15, 1990, to free the defendant, Jorge Samuel Cruz, from the Charleston County Jail, where he was being held awaiting sentencing for an earlier drug-related conviction. All three defendants were charged in Count 1 with conspiring to assist in the escape attempt, conspiring to impede the due administration of justice, and conspiring to aid four other parties to travel in interstate commerce from Florida to Charleston, South Carolina, to effect the jail-break and to promote an international business enterprise engaged in distributing drugs from South America to the United States [1].

---

1. An alleged fourth objective of the conspiracy, namely, to possess and distribute a controlled substance, Lorazepam, was dismissed by the court.

Count 2 of the indictment charged the defendants, Vasquez and Carmen Cruz, with the substantive offense of aiding in the aforesaid attempted escape of Jorge Cruz. Count 3 of the indictment charged Jorge Cruz with the substantive offense of attempting to escape. In Count 4 of the indictment, all three defendants were charged with the substantive offense of impeding the due administration of justice. Count 5 of the indictment charged the three defendants with procuring four other parties to travel in interstate commerce to promote an international drug enterprise in smuggling and distributing drugs in the United States and performing acts to facilitate the escape of the defendant, Jorge Cruz. Finally, Count 6 of the indictment charged all three of the defendants with possessing, with intent to distribute, Lorazepam, a controlled substance.

After a lengthy trial, the court directed a verdict of acquittal as to Count 6 of the indictment. Counts 1, 4 and 5 were submitted to the jury as to all three defendants, Count 2 was submitted as to the defendants Vasquez and Carmen Cruz only, and Count 3 was submitted only as to the defendant, Jorge Cruz. The jury returned a verdict of guilty as to Count 1 against all three defendants. The defendants, Vasquez and Carmen Cruz, were also found guilty as to Counts 2 and 5, and not guilty as to Count 4, and the defendant, Jorge Cruz, was found guilty as to Count 3 and not guilty as to Counts 4 and 5.[2] After their trial and conviction as aforesaid, the defendants moved for a judgment of acquittal and/or new trial on all Counts of which they were convicted, and the court, for the reasons expressed orally at the hearing of those motions, denied the same. The case is now before the court on a legal issue regarding the application of the Sentencing Guidelines. This requires a decision by this court as to the meaning of the verdict returned by the jury on the question of whether these three defendants conspired to impede the due administration of justice. As heretofore indicated, the jury found these three defendants guilty as to Count 1 without specifying, because of an objection raised by counsel for the defendants, whether the conviction in Count 1 was applicable to all three of the objects of the conspiracy, one object being to impede the due administration of justice. The jury found all three of the defendants not guilty of the substantive offense of endeavoring to impede the due administration of justice, and aiding and abetting in such endeavor. Having found all three defendants guilty of the substantive count of aiding in the attempted escape, and the defendants, Vasquez and Carmen Cruz guilty of the substantive count of violating the Travel Act as charged in Count 5 of the indictment, the defendants contend that it is clear from the jury's verdict that the jury determined that the three defendants were not guilty of conspiring to impede the due administration of justice.

On the other hand, the Government contends that the verdict of the jury does not establish that the obstruction of justice charge was not one of the objects of the conspiracy. All parties agree that the main issue before the court is whether § 1B1.2(d) of the Sentencing Guidelines is applicable here. That Section reads as follows:

(d) A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

Of particular concern here is Application Note 5 which follows the above Section, and which reads as follows:

(5) Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does

---

**2.** Finding Jorge Cruz not guilty of impeding justice, where the key issue was whether the three defendants knew of his impending sentencing proceeding, does seem ludicrous, as certainly he knew that he faced such a proceeding. Likewise, it seems equally ludicrous to find Vasquez and Carmen Cruz guilty, and Jorge Cruz not guilty, of violating the Travel Act, although, admittedly, the imprisoned Jorge Cruz could not "travel." However, it has long been established that inconsistent jury verdicts are perfectly legal. *U.S. v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. U.S.*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *U.S. v. Polowichak, et. al*, 783 F.2d 410, 417 (4th Cir.1986).

not establish which offense(s) was the object of the conspiracy.[3] In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense. (Last sentence omitted).[4]

▌ The first issue to be determined is whether § 1B1.2(d) is applicable. The defendants argue that the circumstances of this case indicate that the jury, in fact, "decided the issue" because the jury was fully and correctly instructed on the requirements of the obstruction of justice offense, intelligently debated whether or not the elements of the crime were proven, and acquitted the defendants on the obstruction of justice substantive count. The defendants assert that the course of proceedings, the arguments of the attorneys, the comments of the court, and the instructions to the jury provide a clear and distinct roadmap to the jury's findings.

During oral arguments on the issues herein raised, the defendants contended that the conspiracy and substantive obstruction of justice charges were basically the same. The defendants focused on the fact that the word "conspiracy" was actually used in the substantive count. This caused the court concern because of possible double jeopardy or collateral estoppel implications; therefore, the court thoroughly reviewed the indictment and its charge. Upon review, this court finds that, although the indictment may have been defectively worded, any possible defects were cured by this court's general instructions, and, particularly, by its charge in response to a question from the jury indicating that the jury, too, was confused about the apparent conspiracy charge in a substantive count.

In its review, the court focused on the jury's second question, which was read by the court at Tr., Vol. 9, p. 1556:

Can we have a copy of the judge's instructions? ... [B]ecause we are somewhat confused about the similarities of Count 1, paragraph 1, section B. That's the obstruction of justice part of the conspiracy charge ... and Count 4, which is the obstruction of justice substantive charge.

Instead of giving the jury its written instructions, this court attempted to answer the jury's question. The court stated Tr., Vol. 9, pp. 1558–1560:

... [I]n the conspiracy, the first count involves the planning or conspiracy or the scheme to obstruct justice ... [T]he fourth count, is the actual performance of the acts that impede justice or aiding and abetting therein.... Now let me see if I can explain it to you. Mr. Foreman, if you and I met up in my office and we planned, made plans to rob a bank, and we made all of these plans, we conspired, we decided what we were going to do and how we were going to do it, that would be the conspiracy part of bank robbery. Well, if you went and robbed the bank, the doing of the conspiracy, that's the substantive count.

Now, in applying it to what you have in mind, in Count 1(B) ... of impeding justice, that is the conspiracy. They're charged with making all of these plans, these coconspirators, and planning to impede justice. And then in count 4, they're charged with actually impeding justice or aiding and abetting. So ... if you and I plan to rob the bank, that's when we scheme and plan. You have got to have at least two people. Or you and I and one other person plan to rob the bank, we would engage in a conspiracy to rob a bank. Then, if, Mr. Foreman, you went down and actually committed the act, you

---

3. This court notes that it originally proposed employing a verdict form which would have clearly indicated the objects of the conspiracy of which the defendants were found guilty and those of which they were acquitted. Upon objection to the verdict form by the defendants, this court modified the form so that it would not indicate the objects of which the defendants were acquitted or found guilty.

4. Both parties agree that the reasonable doubt standard is to be employed by a court applying § 1B1.2(d). *See* U.S.S.G. Appendix C, Note 75, and *U.S. v. McKinley*, 995 F.2d 1020 (11th Cir. 1993); *U.S. v. Horton*, No. 94–5060 at p. 4, 1994 WL 551392 (4th Cir. October 11, 1994) (unpublished).

would be guilty of the substantive charge of bank robbery. And if I loaned you my automobile to do it, to get away, or if I went and rented a house or something for you to go hide in, I would be aiding and abetting. I wouldn't have actually gone in and robbed the bank insofar as the substantive count was concerned, that's the equivalent of Count 4, but I would be doing something to make your criminal venture succeed. I would be aiding and abetting you....

So, that's the difference in the two charges. The conspiracy charges that these coconspirators, that the defendants and others, known and unknown to the grand jury, is the way they put it, conspired, schemed and planned to impede the administration of justice by financing and planning and conspiring, hiring others to facilitate the escape of Mr. Cruz, who is a federal prisoner housed in the Charleston County jail. They planned that, facilitated it.....

Then the substantive count, Count 4, says that ... these same coconspirators aided and abetted in carrying out this, actually the carrying out of the jailbreak or the attempt to carry out the jailbreak, which would have been ... had the effect of impeding justice.

This court finds that its response to the jury adequately conveyed the difference between the conspiracy and substantive counts, despite the word "conspiracy" being in both counts. The court's answer clearly indicated that the conspiracy count covered the planning stage of a crime and that the substantive count covered the actual carrying out of acts in attempting the crime, or aiding and abetting therein; thus, this court feels that it made it clear to the jury, and the jury fully understood, that even if they chose to acquit the defendants on the substantive count, regarding impeding justice, they could still convict them on the count charging conspiracy to impede justice. Despite the fact that the word "conspiracy" was in the substantive count, this court has concluded that the jury understood that the substantive count would require proof different from that involved in the conspiracy count; thus, this court finds that the verdict itself does not establish

which offense(s) was the object of the conspiracy, and that U.S.S.G. § 1B1.2(d) must be applied.

■ This court has reviewed in detail the cases cited by the defendants seeking a ruling by this court that the doctrine of res judicata or collateral estoppel based on double jeopardy should apply here and prevent a finding of guilt of the defendants of the conspiracy charge of obstruction of justice in view of the acquittal by the jury of the substantive charge of the same offense. In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), it is clear, and the only ruling that common sense would allow, in order to convict that defendant in a second trial, the second jury would have been required to reach an opposite conclusion from that reached by the first jury; thus, that defendant's second prosecution would have constituted double jeopardy. As indicated in *Dowling v. U.S.,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), and *Schiro v. Farley,* — U.S. ——, 114 S.Ct. 1341, 127 L.Ed.2d 688 (1994), the collateral estoppel component of the double jeopardy clause is inapposite when the party seeking to apply this theory fails to demonstrate that the issue whose litigation he seeks to foreclose was actually decided in his favor. For the reasons heretofore expressed in this order, this court does not feel that a determination by this court of the conspiracy issue regarding the charge of impeding justice issue is foreclosed by the jury's not guilty verdict on the substantive issue of that charge.

■ Having decided that U.S.S.G. § 1B1.2(d) is applicable here, this court must determine, were it sitting as the trier of fact, whether it would have convicted the defendants of conspiring to impede the due administration of justice charged in Count 1, i.e., was the obstruction of justice an object of the conspiracy, and such decision must be the court's decision on the facts, *not* what the court felt the jury decided. See *U.S. v. Horton,* No. 94–5060 at p. 4, 1994 WL 551392 (4th Cir. October 11, 1994) (unpublished). As previously stated, the parties agree that a reasonable doubt standard must be applied by the court in deciding this question.

■ There are three core elements that the government must establish under the facts of this case to prove a violation of the obstruction of justice statute, 18 U.S.C. § 1503: (1) there must be a pending judicial proceeding, (2) the defendant must have knowledge or notice of the pending proceeding, and (3) the defendant must have acted corruptly with the specific intent to obstruct or impede due administration of justice.[5] This court ruled at trial that sentencing of a convicted person is a judicial proceeding. The real issues here are the second and third elements as to which the defendants assert there was no evidence adduced at trial to support a finding beyond a reasonable doubt that the defendants Vasquez or Carmen Cruz even knew that the object of the jailbreak— (Jorge Cruz)[6]—was awaiting a sentencing hearing. To the contrary, the government argues that the evidence did prove beyond a reasonable doubt that the defendants Vasquez and Carmen Cruz were aware of the upcoming sentencing of Jorge Cruz. This court requested that both parties review the transcripts and cite specific passages which tended to prove or disprove these defendants' alleged knowledge. Both sides have responded to this request, and these passages were specifically addressed during oral arguments. The passages are listed as follows:

1. Robert Viana's testimony about his conversation with Lourdes Oliva.

Q. Did you tell her anything about how that plan was to be carried out?

A. Yeah. She asked me who that person was. And I told her that it was my cousin's lover. Female—female cousin. It was my cousin's lover. Basically, I explain to her that they had a relationship, that he had a wife. And they—I was—I was told that the gentleman was a very nice person, very well-educated, that they want him out. And I told her, she asked me how much time he was facing. I told her that he was facing up to 45 years sentence. She asked me where he was arrested, and I told her he was charged when he was trying to retrieve some—some drug shipment from a van he was arrested.

Q. How did you know all of that information?

A. I learned this information through Mrs. Gloria Vasquez.

Tr., Vol. 2, p. 300.

2. Lourdes Oliva's testimony about her conversation with Robert Viana.

Q. What did he say about the person?

A. It was a man who had a sentence of 45 years. And that he wanted to get him out of jail.

Q. Did he say why he wanted to get him out of jail?

A. He was—well, he was—they were trying to get him before the sentence was either reduced or before the sentence would come down, they were trying to get him out before then. They wanted to take him out of that place before they took him somewhere else.

Tr., Vol. 4, p. 816.

3. Robert Viana's testimony about Carmen Cruz' statements:

Q. What was the purpose of this trip to Charleston?

A. You mean—Mrs. Carmen was getting kind of upset, you know, she was trying to rush things. She was very desperate to get—to get on with the plan. She was afraid. She mentioned one time that she was afraid that they would move "El Flaco" to another facility which will be more difficult to break him out from there. (Note: The prisoner, defendant Jorge Cruz, was also known as "El Flaco.")

Tr., Vol. 2, p. 288.

Q. (By Mr. Hubbell) Mr. Viana, what did you discuss with Maria [a name often used to refer to Carmen Cruz] at the park?

5. The court instructed the jury that these requirements also applied to the conspiracy count.

6. It is clearly obvious that the defendant Jorge Cruz knew of his upcoming sentencing; therefore, this court finds that Jorge Cruz had knowledge of a pending judicial proceeding.

A. Well, after I was introduced by Pelusa to Mrs. Maria, Mrs. Maria asked me that she have—she have been getting reference about me as a serious person. That she knew I was a good driving. You know, like getting directions.

Q. Getting what?

A. Directions.

A. I—like I can be sent to any place and I will never get lost. She told me that. She [Carmen Cruz] told me her husband was in jail. There was a call in to his lawyers. He was not standing any chance in South Carolina, that he should make any unlawful attempt to get him out of jail.

Tr., Vol. 2, p. 238.

4. Roberto Rego's testimony (original informant) about what Carlos—(a name often used to refer to Viana)—said to him about the plan:

Q. Did Carlos tell you when the escape was supposed to happen?

A. Well, we're talking, you know, at the hotel when he came back, when he came from Miami. And then he said he had to hurry up because the guy was about to get sentenced and once he gets sentenced he will be remove from.

Tr., Vol. 5, p. 852.

Q. Okay. Now, Carlos also told you that it was important to do this soon because the prisoner was going to be moved the following week, correct?

A. Well he didn't mention it that way. He mention that a guy was supposed to go to trial soon. And was—and was convicted or whatever, you know, he was going to be removed from there.

Q. And so he did say, though, it was important to do it soon because the man was going to go to trial soon and he might be convicted and moved?

A. Right.

Tr., Vol. 5, p. 877.

The government argues that, in addition to these passages, there is circumstantial evidence which supports its position. As to defendant Carmen Cruz, the government asserts that Jorge Cruz was, at the same time, a co-conspirator and the object of the escape plan; thus, he knew that he was awaiting sentencing when the plans to free him were formulated. Since the defendants Jorge and Carmen Cruz were married at that time, and Carmen exclaimed repeatedly on tape [7] that she was in charge of the jailbreak plot [8] and that she was the only one who knew how Jorge wanted it carried out,[9] the government argues that it is inconceivable that Carmen Cruz was unaware that her husband had not been sentenced when the jailbreak was planned. In addition, the government points to evidence that Carmen Cruz relayed information concerning the jailbreak, including maps and diagrams, to Viana, e.g., Tr., Vol. 2 at 258, 273; Vol. 3 at 455; and Vol. 5 at 712.

As to defendant Gloria Vasquez, the government argues that Vasquez was kept abreast of all the jailbreak plans from the time she recruited Robert Viana until the day of Viana's arrest. As support for this argument, the government refers to Viana's testimony that he met with Vasquez every time he came to Miami to work on the jailbreak, Tr., Vol. 2, p. 245, and that her intimate involvement in the plans is also evidenced by her taped statements in which she described the whole operation.[10] Moreover, the government argues that it was proven at trial that Vasquez had close romantic and business ties to Jorge Cruz, Tr., Vol. 2, p. 281, and that she stated on tape that she initiated the jailbreak conspiracy because she had to free Jorge Cruz so he could pay a $1,500,000.00 drug debt owed to her.[11]

The defendants make several arguments in response. First, they argue that all of the conversations cited in the several passages

---

7. A translated transcript of the tape was submitted in redacted form as Government's Ex. 95.

8. Government's Ex. 95, at pp. 10–12 & 20.

9. Government's Ex. 95, pp. 13, 17.

10. See entire Government Ex. 95 since references are made throughout entire document.

11. See Government Ex. 95.

took place out of the presence of the defendants Vasquez and Carmen Cruz. Second, they contend that Lourdes Oliva first stated in her testimony that "it was a man who *had* a sentence of 45 years" (emp. added). Third, they argue that Robert Viana's testimony that he met with Vasquez whenever he came to Miami to work on the jailbreak proves only that she knew of the jailbreak plans and not that she had any information on Jorge Cruz's pending sentencing hearing. Furthermore, defendants contend that testimony revealed that Vasquez was kept aware of the progress of the escape plan because she was in love with Jorge Cruz and wanted him freed so she could collect money owed to her in the drug business.

During oral arguments, the government urged that the testimony of Lourdes Oliva, which is again stated, was telling evidence of Vasquez's knowledge:

Q. What did he say about the person?

A. It was a man who had a sentence of 45 years. And that he wanted to get him out of jail.

Q. Did he say why he wanted to get him out of jail?

A. He was—well, he was—"they" were trying to get him before the sentence was either reduced or before the sentence would come down, they were trying to get him out before then. They wanted to take him out of that place before they took him somewhere else. (quotes added)

Tr., Vol. 4, p. 816.

The government insisted that Lourdes Oliva's testimony identified "they" as being the wife of the prisoner, Carmen Cruz, and Viana's cousin, Vasquez, who was Jorge Cruz's former lover. There appears to be no doubt from the testimony that the defendant, Carmen Cruz, was the prisoner's wife at the time of the attempted jailbreak, and that Vasquez was the person described in the trial transcript as Robert Viana's cousin and Jorge Cruz's lover. The defendants, on the other hand, argue that to determine to whom "they" referred would involve pure speculation because the court would be required to consider facts occurring several years before Carmen Cruz and Vasquez ever met, and,

further, for the court to determine who might have had some idea as to what legal proceedings, if any, were pending before the court, would, under the facts proven here, clearly be a finding based entirely on conjecture. Since it is clear that Carmen Cruz was the wife of the prisoner at the time of the planned jailbreak, and that Vasquez was described throughout the trial transcript as the prisoner's lover, and Robert Viana's cousin, e.g. Tr., Vol. 2., p. 300, this court does not believe that it is engaging in any speculation in determining that Oliva was referring to defendants Carmen Cruz and Vasquez when she used the term "they."

The defendants further argue, since Oliva first testified that "it was a man who *had* a sentence of 45 years" (emp. added), that the defendants Carmen Cruz and Vasquez understood that Jorge Cruz had already been sentenced when the jailbreak was planned, making it legally impossible for them to be guilty of impeding justice by interfering with a *pending* sentencing hearing. However, the government argues that this court should review the testimony as a whole, because Oliva immediately explained what she meant, and she made it clear that the plan was to free Jorge Cruz before he was to appear at a sentencing hearing. It appears from Oliva's testimony that she later clarified her comment that the prisoner *had* a sentence of 45 years by stating that Viana told her that "they were to get him before the sentence was either reduced or before the sentence would come down...." While Oliva's testimony may appear contradictory, in Viana's recollection of the same conversation, he testified that he told Oliva that "he was *facing* up to 45 years sentence ..." (emp. added); thus, the court does not agree with the defendants that Oliva's testimony is not credible because of her first comment that "it was a man who *had* a sentence of 45 years" (emp. added).

Upon review of the evidence, the parties' briefs, and oral arguments, this court finds that there was proof beyond a reasonable doubt that both defendants Carmen Cruz and Gloria Vasquez were kept abreast of the jailbreak plans, and that both these defendants were intimately involved with these

plans. As to Gloria Vasquez, there is the direct statement by Viana that he learned that the prisoner was "facing up to 45 years sentence" from Vasquez, and Oliva's testimony supports Viana's testimony. Further, Robert Rego's testimony that Viana told him to "hurry up because the guy was about to get sentenced and once he get sentenced he will be remove from" adds more support, Tr., Vol. 5, p. 852, to this conclusion, and leads this court to find beyond a reasonable doubt that Vasquez was a co-leader in planning the jailbreak, and that she knew about the prisoner's upcoming sentencing proceeding.

As to Carmen Cruz, Robert Viana testified that she told him, referring to the prisoner, Jorge Cruz, that "he was not standing any chance in South Carolina, that he should make any unlawful attempt to get him out of jail", Tr., Vol. 2, p. 238. This statement alone does not indicate that Mrs. Cruz knew about the pending sentencing; however, she is further implicated by this court's determination that she was one of the parties referred to in Oliva's testimony as "they" in the following sentence "... they were trying to get him before the sentence was either reduced or before the sentence would come down, they were trying to get him before then ...", Tr., Vol. 4, p. 816. Additionally, as the government argues, there is ample credible testimony, especially in the taped conversation with Vasquez, that Mrs. Cruz was in charge, that she was the only person who knew how her husband—(the prisoner)—planned the jailbreak, and that she relayed information from the prisoner, including maps and diagrams, to Viana. This proves to this court beyond a reasonable doubt that Mrs. Cruz was deeply involved in the jailbreak plans and that she knew of her husband's pending sentencing proceeding. As to the other charges in the conspiracy count, namely, that the three defendants conspired to plan the jailbreak that failed, and that they conspired to violate the Travel Act, this court finds that the government proved their guilt beyond a reasonable doubt as to each charge. Nowhere in the briefs filed by the defendants, or in oral argument, do the defendants contest this conclusion. Therefore, this court does not feel it necessary to designate the overwhelming credible evidence in the trial transcript that supports its finding on these issues as heretofore set forth. Based on the foregoing, it is

ORDERED, that in preparing the presentence reports on the defendants herein, the United States Probation Office shall apply § 1B1.2(d) of the Sentencing Guidelines to each defendant.

IT IS SO ORDERED.